# WILSON *v.* SNOW.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF
COLUMBIA.

No. 187. Argued March 13, 14, 1913.—Decided April 7, 1913.

The rule that an ancient deed to property in continuous possession of
the person producing it proves itself on the theory that the witnesses
are dead and it is impossible to produce testimony showing execution
by the grantor, is broad enough to admit, without production of the
power of attorney, ancient deeds purporting to have been signed by
agents.

The other necessary facts being present, and the possession of the prop-
erty being consistent with its terms and the original records having
been lost, a deed, over forty years old containing recitals that it was
executed by an administrator under power of sale given by order of
the court, will be presumed to have been executed in accordance with
such recitals.

*Quære*, what rule obtains in the District of Columbia as to whether the
power to convey given to two persons named in a will may be executed
by the survivor when the designation as executors is descriptive of
the persons and not of the capacity in which they are to act.

In the District of Columbia a power of sale given to more than one
person named in a will as executors, coupled with the active and
continuing duty of managing the property, making disposition
thereof and changing investments for the benefit of the family of
testator, is not a mere naked power to sell, but one that creates a
trust which survives and can be executed by the survivor.

Where the duties imposed upon executors are active and render the
possession of the estate convenient and reasonably necessary, they
will be deemed trustees for the performance of those duties to the
same extent as though declared so to be in the most explicit terms.

35 App. D. C. 562, affirmed.

JOHN H. A. WILSON, of Washington County, District of
Columbia, by his will, probated March 20, 1858, after
providing for the payment of his debts, devised all of his
property, real and personal, to his wife, Adelaide Wilson,

during her life of widowhood for the support of herself
and his five minor children. In case of her death or mar-
riage the property was bequeathed to the testator's
brother, Thomas O. Wilson, in trust for the use of the
children.

"And I ' authorize and empower my said brother to ex-
ercise his own judgment and prudence in the discharge of
the duties hereby confided to him,—and it is my wish
and desire that my executrix and executor hereinafter
named shall and may at any time they shall deem best
and to the advantage of my said wife and children, sell
and convey any part or all of my real and personal estate,
and invest the proceeds in good stocks or otherwise, as
they may consider, best, for the benefit of my said wife
and children; in fact, to exercise a sound discretion in the
management, disposition and investment of my said es-
tate for the purpose aforesaid, to-wit, for my wife and
children."

There was a provision requiring the executrix and
executor to care for his servants; . . . "lastly, I do
hereby constitute and appoint my dear wife, Adelaide
Wilson executrix and my affectionate brother Thomas O.
Wilson executor of this my last will and testament."

The will was probated March 20, 1858. Thomas O.
Wilson, one of the executors, died September 21, 1858.
On March 8, 1865, Adelaide Wilson made a deed, in which,
after referring to the will and its probate and the authority
conferred upon herself and her deceased brother-in-law
as executrix and executor to sell for the benefit of the wife
and children of the testator, she by virtue of the authority
vested in her by said will, sold the land to Leonard Huyck,
his heirs and assigns forever.

After eight mesne conveyances, duly recorded, the
property, in February, 1905, was sold to the defendant,
Chester A. Snow, he and his predecessors in title having
held continuous possession of the property since 1865.

Adelaide Wilson died March 28, 1906, and on October 23, 1906, the children brought this action of ejectment against Snow. He claimed under the deed of the executrix, but was not able to prove that she had ever qualified as such. A witness who was familiar with the records in the Register of Wills' Office, testified that he had found therein the will of John H. A. Wilson, with an endorsement that it had been approved by the Register of Wills and an entry in a book that the will had been approved and filed, but that he found no other entries or papers to indicate that either Adelaide Wilson or Thomas O. Wilson had ever qualified as executors or received letters testamentary; that the bond book for December 30, 1856, to April 20, 1861, was missing and that in that book the bond of the executors would have been recorded if one had been given; that the books containing the returns of executors from 1856 to 1861 are missing; that he is unable to say whether the qualification of executors would be shown by the bond book alone or not; that he finds no docket entry relating to the case. Another witness who had frequent occasion to examine the records of the Probate Office between 1857 and 1860 testified that during that period the Probate Office was conducted in a negligent manner; that the witness during that period, in searching for original papers which had not been recorded, found them in a mass of others piled together in an empty fireplace in the building.

There was a verdict for the defendant. A motion for a new trial was overruled. The case was taken to the Court of Appeals, error being assigned on the refusal to charge that the burden was on the defendant to prove that the executrix had qualified; that there was no evidence that she had qualified; that the recitals in the deed were not evidence against the plaintiffs, and on the further ground that the court erred in refusing to direct a verdict for the plaintiffs. The judgment of the Supreme Court of the District was affirmed by the Court of Appeals of

the District of Columbia and the case brought here by
writ of error.

*Mr. Charles F. Carusi* and *Mr. John C. Gittings*, with
whom *Mr. Eugene A. Jones* was on the brief, for plaintiffs
in error.

*Mr. J. J. Darlington* and *Mr. Hugh H. Obear*, with whom
*Mr. William F. Mattingly* and *Mr. Charles A. Douglas*,
were on the brief, for defendant in error.

MR. JUSTICE LAMAR, after making the foregoing state-
ment, delivered the opinion of the court.

The plaintiffs, in this action of ejectment, claimed under
the will of their father, John H. A. Wilson. The defend-
ant, Charles Snow, claims under a deed executed in 1865
by Adelaide Wilson, the nominated executrix. On the
trial there was proof that the will had been probated in
1858, but no record evidence that the executrix had ever
taken the oath of office and qualified as such. After show-
ing the loss of certain books and the negligent manner in
which the probate office was conducted from 1855 to 1861,
the defendant insisted that the recital that the deed had
been executed under the power of sale conferred by the
will was sufficient to show that the nominated executrix
had taken the oath and qualified as such.

The deed was more than 30 years old. The possession
of the land had for 40 years been consistent with its terms,
and it was therefore, admissible as an ancient deed proving
itself on the theory that the witnesses were supposed to
be dead, and that it was impossible to produce testimony
to show the signing, sealing and delivery by the grantor.
This rule has been extended so as to admit ancient deeds
purporting to have been signed by agents without the
production of the power of attorney,—the same reason

that justified the introduction of an ancient deed, without proof of the signature of the witnesses or grantor, authorizing its admission without proof of the capacity in which, or the power under which, it purported to have been executed. For in many cases it would be quite as impossible to prove the due execution by him as agent as by himself as owner. So that where the other necessary facts are present, and the possession of the land has been consistent with its terms, the ancient deed proves itself, whether it purports to have been signed by the grantor in his own right, as agent under power of attorney, or—the original records having been lost—by an administrator under a power of sale given by order of court, not produced but recited in the deed itself. There are cases which support plaintiffs' contention (*Fell* v. *Young,* 63 Illinois, 106, 110), but the weight of authority sustains the ruling of the court below. In *Baeder* v. *Jennings,* 40 Fed. Rep. 199 (14), 216, 217, Justice Bradley, at Circuit, held that other things concurring, the recitals in an ancient deed were some evidence of the facts recited, and he accordingly admitted the administrator's deed 40 years old, which purported to have been made in pursuance of an order of court which was not produced. A similar ruling was made in *Williams* v. *Cessna,* 43 Tex. Civ. App. 315; 95 S. W. Rep. 1106, where an administrator's deed, executed more than thirty years before the trial, was admitted on the faith of its recitals, proof being made that probate records had been destroyed by fire. In *Willetts* v. *Mandlebaum,* 28 Michigan, 521, a deed reciting that it was made in pursuance of an order in a partition suit, was admitted on proof that the records had been lost, the court holding that the same strict proof was not required of ancient probate proceedings as where they were of recent date.

See, also, *Mumford* v. *Wardwell,* 6 Wall. 423; *Davis* v. *Gaines,* 104 U. S. 386, 398; *Fulkerson* v. *Holmes,* 117

U. S. 389; *Taylor* v. *Benham*, 5 How. 233; *Carver* v. *Jackson*, 4 Pet. 183; *Crane* v. *Morris*, 6 Pet. 598, 611; *Reuter* v. *Stuckart*, 181 Illinois, 529, 540–542; *Buhols* v. *Boudousquie*, 6 Martin (N. S.), 153.

2. The plaintiff, however, insists that, even if the recitals are sufficient to show that Mrs. Wilson had qualified as executrix, her deed could not operate to convey the fee, inasmuch as she could not, by herself, execute the power conferred upon herself and her brother-in-law jointly. It was urged that, in this respect, as in all others relating to the construction of wills, the testator's intention must govern; that he had indicated special confidence in the discretion of his brother, and while contemplating that it might be necessary to sell the property had expressly provided that this could not be done unless both the wife and the brother joined in the deed. It was further argued that this particular testamentary requirement, for the combined discretion of the two, coincided with the general rule that a joint power cannot be exercised by the survivor.

This is true where the power has been given A and B by name, and according to some cases, it is true also where given to A and B, executors. It is not so where the power has been conferred upon A and B, as executors, or where the power is coupled with an interest. These distinctions have given rise to endless controversies and conflicting decisions—a result naturally to be expected where an official title has been treated as a mere means of describing the persons instead of designating the capacity in which they were to act. It is, of course, true that the same persons may be referred to in different capacities in the same will. A and B may be donees of a naked power; or A and B, who are the executors, may be donees of such a naked power, or A and B, executors, may be given a power to be exercised in their official capacity. In Sugden on Powers (144) it was said "that the liberality of modern times will probably induce the courts to hold that in every

case where the power is given to executors, as the office survives so may the power." This prediction has not been altogether fulfilled, though the tendency is to hold that the words "A and B, executors," "A and B, hereinafter named as executors," "my said executors," is not a roundabout means of designating the individuals who are to act, but confer power upon them in their official capacity which may be exercised by the survivor.

The plaintiffs, insisting that the rule contended for by them is a rule of property, argue that the authority to "my executor and executrix hereinafter named" conferred power upon Adelaide Wilson and Thomas O. Wilson *nominatim* and as individuals only—the words executrix and executor being merely descriptive of the persons later referred to by name, rather than designating the capacity in which they were to act. Numerous cases referred to in *Robinson* v. *Allison*, 74 Alabama, 254, are relied on to sustain the contention. Many authorities to the contrary are cited by the defendant in error—among which are *Brassey* v. *Chalmers*, 4 De Gex, McN. & G. 528; *Davis* v. *Christian*, 15 Gratt. 11; *Smith* v. *Winn*, 27 S. Car. 598, where the power was given "executors hereinafter named." *Weimer* v. *Fath*, 43 N. J. L. 1. See also *Gould* v. *Mather*, 104 Massachusetts, 283, 286; *Zebach* v. *Smith*, 3 Binney (Pa.), 69; *Clay* v. *Hart*, 7 Dana, 1; *Wolfe* v. *Hines*, 93 Georgia, 329; *Wood* v. *Sparks*, 18 N. Car. 389.

3. It is unnecessary to attempt to reconcile the authorities or to determine which rule obtains in the District of Columbia. For reading this will as a whole it is clear that the power survived because coupled with an interest. It is true that the will did not specifically give the executors any interest in the land, nor was the word "trust" used by the testator. But the power to sell was coupled with the active and continuing duty of managing the property, making disposition thereof, and changing investments for the advantage of his family. Debts were to be paid

and the executors were to care for the slaves.  If in their discretion it became necessary, "my executor and executrix hereinafter named" were to sell all of the property and reinvest the proceeds in good stocks or otherwise; "in fact to exercise a sound discretion in the management, disposition and investment of my said estate [for the benefit and advantage of] my wife and children."  This was not a mere naked power to sell, but created an interest or raised a trust which would preserve the power to sell without regard to whether the interest was beneficial to the executors or not.  For it is "the possession of a right in the subject over which the power is to be exercised that makes the interest" or creates "an authority coupled with an interest" which "survives for the purpose of effecting the object of the power."  *Peter* v. *Beverly*, 10 Pet. 532, 564; *Taylor* v. *Benham*, 5 How. 233; Pomeroy Eq. J. (3d ed.), § 1011.

And even if, as claimed, the power to sell was not mandatory, it was coupled with duties which, though to be exercised at their discretion, could not be arbitrarily disregarded by the executors.  The duty of management raised the obligation to care for the property, keep it insured, pay the taxes and collect the rents.  Adelaide Wilson and Thomas O. Wilson, whether acting as executors, or as trustees by implication, having accepted the appointment, were bound also to appropriate the income from the land or the dividends from the stock to the maintenance of the family and the education of the minor children.  For neglect so to do any one of the *cestui que trust* would have been entitled to maintain a bill against the executors, or trustees, to compel them to discharge the duties for the performance of which full power had been conferred.  The rights of the beneficiary would not cease upon the death of either of the representatives, and as the duty to manage survived, and followed the land, so did the coupled power of sale, which was "manifestly subservient and auxiliary

to the execution of the trusts which the testator had seen fit to connect with the administration of his will." *Gould* v. *Mather*, 104 Massachusetts, 283, 286; *Tobias* v. *Ketchum*, 32 N. Y. 319. "For where the duties imposed upon the executors are active and render the possession of the estate convenient and reasonably necessary, they will be deemed trustees for the performance of those duties to the same extent as though declared so to be in the most explicit terms." *Ward* v. *Ward*, 105 N. Y. 68; *Toronto Trust Co.* v. *Chicago &c. R. R.*, 123 N. Y. 37, 44; *Gray* v. *Lynch*, 8 Gill, 404, 423; *Weimar* v. *Fath*, 43 N. J. L. 1.

The duties imposed by the will continued after the death of Thomas O. Wilson and the power to sell was lawfully exercised by Adelaide Wilson, surviving executrix, when she executed the deed to Huyck, the predecessor in title of the plaintiff. The judgment is

*Affirmed.*