### FRONSOE v. BUSHNELL.

(Circuit Court of Appeals, Sixth Circuit. July 1, 1918.)

No. 3144.

1. EVIDENCE ⟂372(3)—"ANCIENT DEED."

A deed of bargain and sale, when 48 years old, was an "ancient deed."

2. EXECUTORS AND ADMINISTRATORS ⟂145—POWER TO SELL REALTY—PRESUMPTION FROM ANCIENT DEED.

After 48 years, bargain and sale deed of executrix, authorized to sell only if personalty was insufficient to pay legacies, which conveyed interest of executrix, and stated she had full power to convey, followed by warranty, raised rebuttable presumption that personalty was insufficient, and justified admission of deed in action of ejectment by heir at law of testator's devisee.

3. EJECTMENT ⚖⟹93—SALE BY EXECUTRIX—SUFFICIENCY OF PERSONALTY TO PAY LEGACIES—EVIDENCE.

In ejectment by heir at law of testator's devisee against defendant, claiming under bargain and sale deed of executrix, authorized to sell realty only if personalty was insufficient to pay legacies, evidence *held* insufficient to show conclusively personalty was sufficient to pay expenses of administration, debts, allowances to widow, and legacies.

4. EXECUTORS AND ADMINISTRATORS ⚖⟹138(1)—SALE OF REALTY—COURT ORDER.

Though, in absence of testamentary power of sale, executrix could not sell realty to pay debts or legacies without court order, testamentary power of sale extending in terms only to legacies, they being postponed to expenses of administration, debts, and allowances to widow, power of sale to meet legacies could be exercised by executrix whenever it was clear personalty would be insufficient, after meeting other expenditures.

5. EJECTMENT ⚖⟹9(3)—RECOVERY—STRENGTH OF TITLE.

A plaintiff in ejectment must recover on the strength of his own title, not upon the weakness of his adversary's.

6. EJECTMENT ⚖⟹95(1)—TITLE—PRIMA FACIE EVIDENCE—POSSESSION.

Possession of realty under claim of ownership in fee is prima facie evidence of title in the possessor.

7. EJECTMENT ⚖⟹86(3)—BURDEN OF PROOF.

Though pleadings in ejectment, in connection with plaintiff's evidence, made prima facie case in her favor, requiring defendant to rebut it, burden of ultimately showing title still rested on her, though in determining whether burden had been sustained her prima facie showing was to be taken into account, as well as contrary presumption afforded by ancient deed under which defendant claimed.

8. APPEAL AND ERROR ⚖⟹215(1)—RESERVATION OF GROUNDS OF REVIEW—OBJECTION TO INSTRUCTION.

If an instruction was unsatisfactory to plaintiff, fairness to the court and defendant required her to say so, and her right to complain on appeal, if she had any, was lost by her silence.

9. APPEAL AND ERROR ⚖⟹1050(1)—HARMLESS ERROR—EVIDENCE.

In ejectment, by heir at law of devisee by will authorizing executrix to sell realty only if personalty was insufficient to pay legacies, against defendant claiming under executrix's bargain and sale deed, admission of evidence of will of executrix, giving her own estate, subject to debts and charges, to her daughter for life, etc., *held* harmless to plaintiff.

10. EJECTMENT ⚖⟹90(1)—EVIDENCE.

In ejectment, by heir at law of devisee by will authorizing executrix to sell realty only if personalty was insufficient to pay legacies, against defendant claiming under executrix's bargain and sale deed, admission in evidence of certified copy of restored transcript of appearance docket of a probate court, so far as relating to proceedings to sell certain other realty of testator assumed to be to pay debts, was proper, having bearing on whether the personalty had proved sufficient.

11. APPEAL AND ERROR ⚖⟹1050(1)—HARMLESS ERROR—EVIDENCE.

In such action, admission in evidence of certified copy of restored transcript of appearance docket of probate court, so far as relating to sale of certain other real estate of testator, *held* harmless to plaintiff.

In Error to the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Ejectment by Louisa Fronsoe against John L. Bushnell. To review judgment for defendant, plaintiff brings error. Affirmed.

⚖⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles Broadwell and W. H. Cowguill, both of Cincinnati, Ohio, for plaintiff in error.

J. E. Bowman, of Springfield, Ohio, and C. B. Wilby, of Cincinnati, Ohio, for defendant in error.

Before KNAPPEN, MACK, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Action in ejectment for the undivided one-half of a parcel of land in Springfield, Ohio, being part of a larger tract, of the undivided one-half of which William Honroth died seised November 26, 1868, leaving a will which was admitted to probate December 2, 1868, by which he disposed of his entire estate as follows: After providing for first paying out of his estate all his "just debts and charges," he gave to his wife, Christine, $4,000 forever, in lieu of her first year's support. He then gave five different legacies, amounting to $9,600, $8,000 of which was given to the trustees of Zion's Society. The entire remainder of the estate was given to the wife, Christine, in lieu of dower, during her natural lifetime. The residue, "unconsumed by her," was to be divided at the wife's death, one-half to the testator's daughter, Louisa Schmidt, during her natural life, and after her decease to her child or children in fee. The other half was given to the trustees of Zion's Society. The wife was appointed executrix. The will expressly empowered her—

"in case there should not be a sufficient amount of personal property to pay the legacies above named to sell at public or private sale, at not less than two-thirds of its value, so much of my real estate as may be sufficient for that purpose, and to give a good and sufficient deed or deeds therefor and re-invest any surplus and enjoy the income thereof as above stated to the benefit of my said wife."

The larger tract referred to had been conveyed on September 6, 1868, and thus less than 3 months before the testator's death, to Honroth and Seegar as tenants in common, upon payment of $3,000, subject to a mortgage for the remainder of the unpaid purchase price, viz. $5,622.77. July 10, 1869, and thus slightly more than 10 months after Honroth and Seegar's purchase of the property, the executrix made and delivered to Seegar, upon consideration of $1,500, a deed of bargain and sale in fee of the undivided one-half of the original tract mentioned, "and all the estate, title, and interest of said Christine Honroth as executrix aforesaid, either in law or equity, of, in, or to said premises"; the executrix expressly covenanting "that she as to said premises has full power to convey the same and further that she will warrant and defend against all claim or claims," except the purchase-money mortgage, which Seegar assumed and agreed to pay. Mrs. Honroth also released "her right and expectancy of dower in said premises." Mrs. Honroth died in 1878. Louisa Schmidt, who was the second life tenant, purchased from Zion's Society its interest in the premises. She died in December, 1908. The plaintiff (who is plaintiff in error here) is a daughter of Louisa Schmidt, and claims title to the premises as devisee under Honroth's will, as heir at law of her mother, and by deed from her brothers and sisters, also devisees

under the will and heirs at law of their mother. The defendant claims under conveyance from Mrs. Honroth, executrix, etc., to Seegar.

Both parties thus claim directly under the testator, Honroth. Apart from the question of limitation later referred to, the conflicting claims of title depend entirely upon the effect of Mrs. Honroth's conveyance to Seegar, and the validity of that conveyance turns solely upon the question whether the conditions prescribed in the power of sale existed. The trial court held that plaintiff's claim as to the one-quarter interest of Zion's Society was barred by limitation. As to the title to the other one-quarter, derived through the children of Louisa Schmidt, the verdict was made to turn upon the question whether the personal estate was sufficient to pay the debts and administration expenses, together with the $13,600 of legacies, including the widow's allowance. The verdict was in defendant's favor.

[1, 2] 1. The principal contention of plaintiff in error is that her motions, made at the conclusion of the evidence, first, to direct a verdict in her favor as to the undivided one-half in question, and, on its denial, for directed verdict as to the one-quarter interest acquired by plaintiff under the will and by deed from her brothers and sisters, should have been granted.

It is evident that, if the motion to direct verdict as to the one-quarter last referred to was properly overruled, it was equally proper to refuse to direct verdict as to the one-quarter interest conveyed by Zion's Society, regardless of the question of limitation as to that interest. Upon this branch of the case the question is in narrow compass. At the time of the trial the deed from the executrix to Seegar was 48 years old. The conveyance was thus an "ancient deed." The grantee, and those claiming under him, had gone into immediate possession of the premises, paying taxes and making improvements thereon. The possession of the property was thus consistent with the perfect validity of the deed. The records of the probate court in the matter of the Honroth estate had been in 1884 (nearly 23 years before the trial below) consumed by fire, excepting only the appraisement of the personal property of the deceased, the book of docket entries (or administration docket), showing the presentation of the will, its admission to probate, the granting of the letters testamentary to the executrix, the appointment of appraisers, the filing of the inventory, the appointment of an administrator de bonis non with the will annexed after Mrs. Honroth's death, the filing of accounts current by that administrator and their suspension, and the allowance and confirmation of his account current, in 1879. The deed in question purports to have been executed by the grantor as executrix of the estate of the deceased. This deed could be made only on condition that the personal property was not sufficient to pay the legacies after payment of the costs and expenses of administration, the widow's allowance, the debts of the deceased and the legacies. The conveyance of the premises, together with the "estate, title, and interest" of the executrix, coupled with the statement that she "has full power to convey the same," followed by a full warranty, except as to the purchase-money mortgage before referred to, amounted, in legal substance, to a declaration that

the conditions authorizing the testamentary power of sale existed at the time. Apart from the question hereafter discussed, as to what the inventory showed, there was nothing in the record, so far as preserved, negativing such condition. These circumstances raised a presumption (rebuttable, to be sure) that such conditions actually existed, and justified the admission of the deed in evidence. Wilson v. Snow, 228 U. S. 217, 33 Sup. Ct. 487, 57 L. Ed. 807, 50 L. R. A. (N. S.) 604; Johnson v. Jarvis (C. C. A. 4) 223 Fed. 756, 139 C. C. A. 286; Butterfield v. Miller (C. C. A. 6) 195 Fed. 200, 206, 115 C. C. A. 152, and following.

[3, 4] Plaintiff insists, however, that the testimony conclusively showed that the personal estate was amply sufficient to pay the costs and expenses of administration, the debts of the deceased, the allowances to the widow and the other legacies; second, that in any event the executrix could not validly sell for payment of debts and legacies without an order of the court therefor.

As to the first question, that of fact: The appraisement showed about $27,000 of personalty. There was testimony tending to show that the debts of the deceased were small, and that large sums beyond the inventory were realized. The testimony would have sustained a verdict for the plaintiff. On the other hand, it did not conclusively appear that the appraised valuations were realized, nor that the personal estate collected was sufficient to pay the four classes of items enumerated, taking into account the evidence of the probable expense of administration, the fact that but $3,000 of the legacy to Zion's Society was paid before the sale to Seegar, and the proceedings had in 1871 to sell other real estate for payment of debts. A discussion of the details of the testimony would serve no useful purpose. Upon the question of law, while it is true that in the absence of testamentary power of sale the real estate could not be sold to pay either debts or legacies without court order, and that the testamentary power of sale extends in terms only to legacies, yet it is entirely clear that as legacies were postponed to the other three classes of expenditures, the testamentary power of sale to meet legacies could lawfully be exercised whenever it was clear that the personalty would be insufficient for their payment, after meeting the expenditures which had precedence over legacies. We think the record presented a question of fact on this subject, and that it was not error to deny the motions to direct verdict.

[5-7] 2. The trial court, after instructing that the deed from the executrix to Seegar, with its ancient character, raised a disputable presumption "that whatever was done was rightly done," and that "the executrix would not have made the deed unless there were facts upon which the proper exercise of the power was based," said that this presumption placed on plaintiff the burden of showing, "from all the evidence, and from every fact which has been adduced in this case, and from all reasonable inferences to be drawn from the facts such as they are shown to be, that the amount of money in the hands of the executrix, the $27,000, was sufficient to pay the costs of administration, widow's allowance, debts and legacies."

The criticism seems to be that as defendant's answer admitted that Honroth died seised of the interest in question, that he left a will containing the provisions for its disposition before stated, and that plaintiff and her grantors were devisees under the will, the burden of showing the existence of conditions authorizing the sale was thereby shifted to defendants. The answer, however, denied generally that plaintiff had any interest in the premises sued for, and asserted defendant's ownership of the same, which presented the ultimate issue under the Ohio Code (sections 11903, 11904). The broad rule is that a plaintiff in ejectment must recover on the strength of his own title, and not upon the weakness of his adversary's and that possession of real estate under claim of ownership in fee is prima facie evidence of title in the possessor. Ricard v. Williams, 7 Wheat. 59, 105, 5 L. Ed. 398; McGuire v. Blount, 199 U. S. 142, 144, 26 Sup. Ct. 1, 50 L. Ed. 125; Cleveland v. Bigelow (C. C. A. 6) 98 Fed. 242, 247, 39 C. C. A. 47. True, the pleadings, in connection with plaintiff's evidence, made a prima facie case in her favor, requiring defendant to rebut it; but the burden of ultimately showing plaintiff's title still rested on her, although in determining whether that burden had been sustained her prima facie showing was to be taken into account, as well as the presumption to the contrary afforded by the executrix's deed, in connection with all the other evidence in the case.

[8] Assuming, however, that plaintiff would have been entitled, had she asked it, to some modification, elaboration, or explanation of the criticized instruction, yet no such request was made, nor was any exception taken to the charge in this respect—indeed, the only exception taken related to the instruction that the recovery of the interest derived from Zion's Society was barred by limitation. If the instruction was not satisfactory, fairness to the court and to the defendant required plaintiff to say so. Her right to complain, if she had any, was lost (Denison v. McNorton [C. C. A. 6] 228 Fed. 401, 407, 142 C. C. A. 631); and if the instruction complained of was to any extent exceptionable (which we do not hold), it is enough to say that prejudicial error is not so apparent as to justify a reversal of the judgment in the absence of exception.

[9] 3. Against plaintiff's objection, defendant gave evidence of the will of Mrs. Honroth which gave her own estate, subject to "debts and charges," to her daughter Louisa Schmidt for life, the remainder to the latter's heirs. The criticism made is that the will had no bearing upon the issues in the case, and that "its admission would indicate to the jury that Christine Honroth had the right to dispose of the property of William Honroth by will." We see no merit in this contention. If the fact of Mrs. Honroth's will was immaterial for any purpose, which we do not hold (another purpose is claimed for it), we do not see how it could have been prejudicial.

[10, 11] 4. Complaint is made of the admission of a certified copy of the "restored transcript of appearance docket No. 3" of Hamilton county probate court, so far as it relates to the proceedings to sell certain other real estate in 1871, assumed to be for the purpose of paying debts. We think the fact of such proceedings to sell had some bearing

upon the question whether the personalty had proved sufficient to pay debts and administration expenses. The proceeding was by Mrs. Honroth as executrix against herself as widow, Mrs. Schmidt and her husband, and Zion's Society. Whether or not the evidence was competent as against the interest derived under the will, in the absence of proof of representation of the interests of children not shown to have been then born (which we find it unnecessary to decide), it would seem competent so far as the one-quarter interest claimed under deed from Zion's Society is concerned; and after the exclusion by the court of that claim no motion seems to have been made to withdraw the evidence in question, nor did the charge refer to it. Its claimed ineffectiveness to pass title to the premises sold under it would not necessarily make it incompetent for any purpose whatever. To say the least, we are not convinced that there was prejudicial error in its admission.

The judgment of the District Court must be affirmed.