**W. T. CARTER & BRO. et al. v. BENDY.*
(No. 786.)**

(Court of Civil Appeals of Texas. Beaumont. March 27, 1923. Rehearing Denied April 25, 1923.)

**1. Appeal and error ⬥527(2)—Conclusions of law and fact not timely filed not considered.**

Conclusions of law and fact of the trial court filed after the expiration of time allowed by law cannot be considered by the appellate court for any purpose, and form no part of the record on appeal.

**2. Executors and administrators ⬥450—Administration not presumed closed from lapse of time.**

In an action by an administrator where the defendants allege by plea in abatement that the administration has been closed, the burden is on them to prove that fact, which will not be presumed merely from lapse of time.

**3. Appeal and error ⬥742(4)—Proposition necessary to raise error.**

Where there is no proposition on appeal raising the erroneous admission of testimony other than a statement under a general proposition that objection was made thereto, the testimony was in the record for what it was worth, and was properly considered by the court.

**4. Executors and administrators ⬥450—Administration never presumed to have been closed.**

A presumption that administration has been closed never arises when the interest of the estate is involved, whether the issue be among those entitled to the estate or between it and third parties.

**5. Executors and administrators ⬥450—Evidence insufficient to show administration closed.**

Evidence held insufficient to sustain a plea in abatement to an administrator's action on the ground that administration had been closed.

**6. Appeal and error ⬥232(2)—Objections raised first time on appeal not considered.**

Objections to excluded evidence urged for the first time on appeal cannot be considered, and the ruling of the court on appellee's objections, if erroneous, cannot be sustained on grounds not urged at the trial.

**7. Appeal and error ⬥903—Deed referred to in record presumed original.**

Where the only description in the record of an offered instrument is that of a deed, an inference arises that the original and not a copy was offered, and the burden rests on him who asserts that it is a copy to make the record reflect his contention.

**8. Evidence ⬥372(10)—Record imports delivery and certified copy of 50-year old record of equal dignity with original.**

The record of a deed raises the presumption of its delivery, and a certified copy of a deed which has been of record for 50 years is of equal dignity with the original deed itself.

**9. Deeds ⬥193—Presumed to be executed on acknowledgment date.**

Nothing appearing to the contrary, a deed is presumed to have been executed on the day it was acknowledged.

**10. Sheriffs and constables ⬥83—Sheriff selling land under process may execute deed therefor after expiration of term.**

Where a sheriff sold land under legal process and neglected or refused or for any reason failed to execute and deliver to the purchaser a deed while he was sheriff, he had authority after the expiration of the term of his office to execute and deliver such deed, his act in executing the deed being merely ministerial.

**11. Evidence ⬥372(8)—Ancient sheriff's deed inadmissible in evidence unless supported by judgment and execution.**

A sheriff's deed, though an ancient instrument, is not admissible in evidence unless supported by the judgment and execution authorizing the sale.

**12. Evidence ⬥372(8) — Execution ⬥319—Sheriff's deed held admissible as ancient document, and conveys defendant's interest.**

A sheriff's deed more than 50 years old, coming from the proper custody and free from suspicion, is admissible as an ancient instrument when it is shown that the original papers, the judgment, and execution are lost, or a sufficient reason is given explaining failure to pro-

duce them, and in such event recitations by the sheriff in his deed are admissible as evidence to prove the authority under which the sale was made, and, unless the prima facie case thus established is rebutted the deed and its recitals are sufficient to vest in the grantee the interest owned by defendant in the execution.

**13. Evidence ⚖️178(5)—Parol evidence admissible to prove issue and execution of writ of venditioni exponas.**

When the judgment and execution with its return were offered in evidence preliminary to the introduction of the sheriff's deed, and the writ of venditioni exponas was not found after due search, the proponents of the deed had the right to resort to other evidence to establish its execution by the clerk, its delivery to the sheriff, and its due execution by him.

**14. Evidence ⚖️83(1), 89—Records presumed to be kept as required by law, but presumption may be rebutted.**

Where a record is required to be kept by a public officer, it is presumed that he has done so in accordance with law, but this presumption is not conclusive as a matter of law, but is one of fact subject to rebuttal.

**15. Evidence ⚖️158(10)—Secondary evidence admissible to show issue of venditioni exponas.**

Whether the sheriff's deed was or was not executed by virtue of the requisite authority may be established by competent secondary evidence, and the question is not foreclosed by the absence from the execution docket of any entry of the issuance of an order of sale.

**16. Execution ⚖️77—Validity of execution not affected by error in record.**

The failure of the clerk to keep in his execution docket a record of writs issued does not impair the validity of an execution issued, nor affect the authority of the sheriff to execute it; but, since a court of record can speak only through its minutes, where a writ of execution is offered in evidence describing a judgment which has not been entered on the minutes, a conclusive showing is made against the validity of the execution.

**17. Evidence ⚖️332(1)—Exclusion of sheriff's deed erroneous.**

Exclusion of a sheriff's deed from evidence, in view of the careless manner in which the execution docket was kept, *held* error notwithstanding there was no entry in the execution docket of the issue of writ of venditioni exponas.

**18. Execution ⚖️77—"Venditioni exponas" should be recorded same as other execution.**

A writ of venditioni exponas is a writ of execution, due record of which and of the sheriff's return thereof should be made by the clerk on his execution docket as in the case of ordinary execution.

Appeal from District Court, Tyler County; D. F. Singleton, Judge.

Trespass to try title by H. W. Bendy, individually and as administrator, against W.

T. Carter & Bro. and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, and Coleman & Lowe and J. E. Wheat, all of Woodville, for appellants.

E. R. Campbell and L. B. Moody, both of Houston, and J. A. Mooney, of Woodville, for appellee.

WALKER, J. This was a suit in trespass to try title by appellee, individually and as an administrator of the estate of his deceased father, H. W. Bendy, against appellants, involving about 1,163 acres of land, a part of the Ann Fisher league in Tyler county, Tex. Appellee's petition was in the ordinary form of trespass to try title. Appellants answered by plea in abatement, based upon the proposition that, after the long lapse of time since the opening of administration on the estate of H. W. Bendy, it must be presumed, as a matter of law, that administration had been closed, and by general demurrer, general denial, plea of not guilty, and cross-action against their warrantors.

H. W. Bendy, Sr., was the common source of title. Appellee proved heirship and, also, that he had been appointed administrator of the estate of H. W. Bendy, deceased. Appellants claimed under a regular chain of title from and under H. W. Bendy, through a sheriff's deed from H. W. Bendy to W. B. Cline, and by a chain of about 18 warranty deeds emanating from the heirs of W. B. Cline, all duly recorded. In proving common source, appellee offered in evidence the sheriff's deed, conveying H. W. Bendy's interest in the land in controversy to W. B. Cline. In proving their title, appellants offered this deed in evidence, and it was received over appellee's objections, but, at the conclusion of the evidence, it was stricken from the record on appellee's motion. On trial to the court without a jury, judgment was rendered in favor of appellee as administrator of the estate of H. W. Bendy, deceased, and this appeal lies from that judgment.

[1] There is in the record what purports to be the trial court's conclusions of law and fact, but as they were filed after the expiration of time allowed by law for the filing of such conclusions, they cannot be considered by us for any purpose. They form no part of the record on this appeal, and, in making our statement of the case, no weight at all has been given to the statements of fact in such conclusions. Averill v. Wierhauser (Tex. Civ. App.) 175 S. W. 794; I. & G. N. R. Co. v. Mudd (Tex. Civ. App.) 179 S. W. 686; T. & N. O. R. Co. v. Turner (Tex. Civ. App.) 193 S. W. 1087; Bliss v. San Antonio School Board (Tex. Civ. App.) 173 S. W. 1176.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The trial court did not err in refusing to sustain appellants' plea in abatement. On this issue, we take the following statement from their brief:

"Administration was taken out on the estate of H. W. Bendy, Sr., in the probate court of Jasper county, in the year 1884, and Clara A. Bendy was appointed administratrix. In 1886 Clara A. Bendy resigned, and H. W. Bendy, Jr., appellee herein, was appointed administrator. On November 22, 1889, order was entered by the probate court of Jasper county, upon application of Clara A. Bendy and certain heirs of H. W. Bendy, for partition and division of all of the property of said estate. Among other things said decree recited:

(1) Application for the partition.

(2) The names of all those entitled to the property.

(3) Due and legal service.

(4) That two of the heirs are minors, and the appointment of a guardian ad litem.

(5) That more than twelve months have elapsed between the date of the original grant to Harry W. Bendy of letters of administration upon the estate of said decedent and the date of the filing of said application, to wit, September 13, 1889, and that no necessity exists for longer continuance of said administration upon said estate.'

(6) The appointment of commissioners of partition, with direction as to the division of said estate.

(7) That H. W. Bendy, the administrator, is ordered to make and file a full and complete exhibit and account of the condition of said estate, and certain property is ordered withheld from partition to be applied to the 'payment, liquidation, and discharge of the debts and expenses of administration of said estate.'

"On January 30, 1890, the commissioners of partition filed their report, and by order entered of that date the probate court approved and confirmed the same.

"Over objections of appellants' counsel, appellee offered in evidence the following certificate:

"'State of Texas, County of Jasper.

"'This is to certify that letters of administration was granted in this county in the estate of H. W. Bendy, Sr., deceased, and that H. W. Bendy of ——, Texas, was appointed by the court administrator of said estate, and that the administration has never been closed or the administrator discharged, as disclosed by the probate records of Jasper County.

"'Given under my hand and seal of office at Jasper, Jasper County, Texas, on this the 29th day of August, 1916.

"'C. C. Brown,

"'County Judge in and for Jasper County, Texas.'

"Over objections of appellants' counsel appellee, H. W. Bendy, testified: 'I do not think I ever filed with the probate court of Jasper county any final report as administrator of that estate. I have not filed with the court any resignation as administrator. I have never received any notice of discharge or removal as administrator, nor any citation to show cause why I should not be discharged.'"

The order of partition referred to in the statement just made recites that certain lands should be reserved from said partition, "and the same, or the proceeds arising from the sale thereof, applied to the payment, liquidation, and discharge of the debts and expenses of administration of said estate."

[2, 3] The burden rested on appellants to prove the facts alleged in their plea, that is, that the administration on the estate of H. W. Bendy had been closed. Hart v. Kanady, 33 Tex. 720; Chambers v. Ker, 6 Tex. Civ. App. 373, 24 S. W. 1118. A presumption that the administration had been closed did not arise from the lapse of time. Branch v. Hanrick, 70 Tex. 733, 8 S. W. 539; Thomas v. Hawpe, 35 Tex. Civ. App. 311, 80 S. W. 131. In construing article 3249, Complete Texas Statutes:

"Where letters testamentary or of administration shall have once been granted, any person interested in the administration may proceed, after any lapse of time, to compel a settlement of the estate when it does not appear from the record that the administration thereof has been closed."

—it has been held that an administration is not closed until the administrator has been discharged. Blackwell v. Blackwell, 86 Tex. 207, 24 S. W. 389; McLain v. Pate, 58 Tex. Civ. App. 500, 124 S. W. 718. While in their statement under this proposition appellants say they objected to the admission of certain testimony, they have presented no proposition here urging that point, so the testimony is in the record for what it is worth, and was properly considered by the court in reaching his conclusions. We do not agree with appellants that article 3249 was only "for the benefit of persons interested in the administration and against the right of the administrator to claim the benefit of any presumption to avoid an accounting or liability to those interested."

[4, 5] As we understand the construction given this article, a presumption that the administration has been closed never arises when the interest of the estate is involved, whether the issue be among those entitled to the estate or between it and third parties. McLain v. Pate, supra; Caddell v. Lufkin Land & Lumber Co. (Tex. Civ. App.) 234 S. W. 138. As we weigh the evidence offered by appellants, in our opinion they fail to sustain their plea.

In view of the fact that this case must be reversed for reasons hereinafter given, we do not discuss the issue as to whether the plea was properly verified. If the point is raised by exception on another trial, the affidavit should be amended.

The following is a copy of the sheriff's deed offered by appellants and excluded by the court on motion of appellee:

"The State of Texas, County of Tyler.

"Know all men by these presents: That I, sheriff of Tyler county, Texas, by virtue of an execution issued out of the district court

of Tyler county, bearing date the 12th day of May, A. D. 1871, in the case of N. W. Burtis v. W. T. Hyde & H. W. Bendy No. 1043 of the docket of said court to me directed commanding me of the goods, chattels, lands, and tenements of the said W. T. Hyde & H. W. Bendy to make certain monies therein named to satisfy a judgment in favor of N. W. Burtis and against said Hyde and Bendy for $1,400.00 and $13.11 costs of court, and by virtue of said execution having seized and levied upon and advertised for sale according to law the following described tract of land, to wit, 1,163 acres of the Ann Fisher league situated in Tyler county and described in a deed from B. F. Ross, sheriff of Tyler county, recorded in Book G, page 219 to H. W. Bendy to which reference is made. (Here follows description of other lands.)˙ Which execution was returned 'not sold for want of sufficient time to advertise' June 26th, 1871. (Signed R. N. Dicken, Sheriff of Tyler County.)

"And by virtue of a writ of venditioni exponas issued by the clerk of the district court of Tyler county, on the 29th of July, A. D. 1871, commanding me to sell according to law the lands therein described, which had been previously levied upon and advertised for sale as required by law, I did proceed to offer for sale at the court-house door in the town of Woodville, on the first Tuesday being the —— day of August, A. D. 1871, to the highest bidder for cash in blocks of 40 acres each in a square as near as could be, commencing with each tract in the N. E. corner; thence running west, etc., when the first 29 blocks of forty acres were each and * * * in a loud voice and W. B. Cline having bid for each lot the sum of 50 cents, and for the last lot of three acres the sum of 20 cents the same were each struck off to him being the highest, last, and best bidder, for the said several sums making an aggregate of fourteen dollars and 85/100 for the aforesaid 1,163 acres of the Ann Fisher League. * * *

"Now, therefore, by virtue of all the premises above recited and the payment of said several sums of money by W. B. Cline to me cash in hand, the receipt whereof is hereby acknowledged, I, R. N. Dicken, Sheriff of Tyler county, have this day sold, aliened, and conveyed and do by these presents. sell, alien, convey, and pass over unto W. B. Cline, in fee simple forever all the right, title, interest, and claim which H. W. Bendy had in and to the before-described lands on the 7th day of November, A. D. 1870, or at any time since that date to have and to hold the above and foregoing several described tracts of land unto him, the said W. B. Cline, his heirs and assigns forever as fully and completely as I as sheriff aforesaid could do by virtue of my office, and the execution and writ venditioni exponas aforesaid.

"In witness whereof I have hereunto set my hand using scroll for seal, this —— day of —— A. D. 187—.    R. N. Dicken. [Seal.]"

This instrument was acknowledged before W. Thos Hyde, district clerk of Tyler county, on July 8, 1873.

In support of this deed, appellants offered in evidence the petition in the ˌcause, the judgment, and a certified copy of the execu-

tion referred to by the sheriff in his deed to W. B. Cline. The following return was endorsed by the sheriff on the execution:

"Came to hand this 16th day of May, 1871, and executed same day by seizing and levying upon the following described property to wit: "All the right title and interest which H. W. Bendy has in and to the *follow* land: 1163 acres of the Ann Fisher league situated in Tyler County, and described in a deed from B. F. Ross, sheriff, Book G, p. 219 to H. W. Bendy, to which reference is made. (Also other lands in Tyler county.)

"R. N. Dicken, Sheriff of Tyler County.

"Not sold for want of sufficient time to advertise. June 26th, 1871.

"R. N. Dicken, Sheriff of Tyler County."

A sufficient search for the writ of venditioni exponas was shown to afford a predicate for the introduction of secondary evidence as to its execution, delivery to the sheriff, and its execution by him. R. N. Dicken was elected and qualified as sheriff of Tyler county and served as such sheriff from 1870 to 1872. He was not the sheriff at the time he acknowledged and delivered the deed to W. B. Cline. H. W. Bendy, Sr., acquired the land in controversy about 1868, and never assessed it for taxes during his lifetime. W. B. Cline did not assess the land for taxes during his lifetime.

The following additional statement is taken from appellants' brief:

"H. C. Durham, district clerk of Tyler county, was called to testify by appellee. He brought with him an old book, which he described as the fi. fa. docket, containing a record of executions and fieri facias issued in previous years. At page 121 said record showed the following entry:

" 'May 5, 1871. N. W. Burtis v. Hyde and Bendy. Debt $1,412.10. R. N. Dicken, sheriff of Tyler county. Clerk's costs, $11.36.'

"He further testified that he had examined said record down to and including July 29, 1871, and did not find the record of any other execution or fieri facias having been issued in that case; that there was a record of a fieri facias in the case of F. W. Jernigan v. S. S. Frazier, which appeared to have been issued July 29, 1871; that said record ˙also showed a sheriff's return on said writ; that he did not find in his office any other docket containing entries of execution and venditioni exponas for the year 1871.

"He testified on cross-examination that the entries on this docket did not appear to be in chronological order; that they were considerably mixed up with reference to the time they were issued; that as shown by said record the clerk did not make any entry of sheriff's return on executions which appeared to have issued during the year 1871. He cited entries of several cases in which executions were issued May 11, 1871, on which no return by the sheriff was shown on the docket; also executions under date of May 5, 1871, April 7, 1871, and April 17, 1871, on which on return was shown. He also stated: 'That shows the clerk had not copied any returns in the majority of the cases.'

"Being recalled he stated that he had gone through said fi. fa. docket page by page and had found no notation of any other writ of execution or fieri facias in the case of Burtis v. Hyde and Bendy, except the one issued in May 1871, other than notation as follows: 'December 10, 1877; number of the case, 1043; N. W. Burtis v. W. Thomas Hyde & Company; debt, $1,412.10; costs, $12.86; L. P. Crow, Deputy Sheriff.'

"This witness also furnished statement prepared from said docket by himself showing the issuance of executions in 15 cases in which W. H. Bendy, Hyde and Bendy, or Bendy, McDaniel & Hyde were defendants; said executions bearing different dates from May 5, 1871, to May 27, 1879.

"Appellee's counsel admitted that appellants had acquired and now hold whatever title to the land in controversy, if any, which passed under the sheriff's deed from Dicken to Cline above referred to, which they had acquired from parties holding under that deed for valuable consideration.

"Appellants offered in evidence certificate from the office of the Comptroller of the State of Texas showing assessment of the Ann Fisher league of land in Tyler county for taxes, which showed that beginning with the year 1881 and continuing up to and including the year 1920, appellants and those under whom they claimed and those who held under the sheriff's deed from Bendy to Cline had rendered the land in controversy for taxes every year with but few exceptions. Said statement did not show the assessment of any land in the name of the estate of H. W. Bendy subsequent to 1871 and up to and including the year 1920."

"Dr. J. B. Roberts testified that he resided in Woodville, Tyler county, from February, 1881, up to about eight years before the trial; that he was a practicing physician, and had also been engaged in the mercantile business; that he knew H. W. Bendy, Sr.; that he also knew H. W. Bendy, Jr.; that he knew Jim Bendy, who at one time lived in Tyler county; that he is the same J. B. Roberts who at one time owned lots 4 and 5 of the Ann Fisher league, being the land in controversy; that he bought the same from W. J. Clay about the year 1900; that at the time he bought the same he went on the land and looked at it with a surveyor; that before purchasing said land he had Judge J. A. Mooney, a practicing attorney at Woodville, to investigate the record and give him an opinion as to the title; that Mr. Mooney passed on the title and advised him that it was good; that he was the family physician of James Bendy and of Mrs. Ganchon, the daughter of H. W. Bendy, Sr.; that he also knew W. Thomas Hyde; that he never heard of either H. W. Bendy, Jr., or Jim Bendy, or Mrs. Ganchon, or any other living person, asserting any adverse claim to this land while he owned it and up until the time of this suit; that at the time he bought these two blocks of land he went on the same, and no one was asserting any adverse claim; that he never knew of any adverse claim to the same; that the Ann Fisher league of land is six or seven miles from the town of Woodville; that while he owned said land he gave an oil lease on the same for two or three years; that he did not cultivate or fence any part of the land, but exercised over the same other acts of ownership.

"It was agreed that W. Thomas Hyde died in the year 1888.

"It was agreed that R. N. Dicken died February 14, 1900, and that W. B. Cline died June, 1878.

"Martin Dies testified that his wife was one of the heirs of W. B. Cline; that among other lands she received the J. W. Richardson 160 acres in the partition of the Cline estate (one of the tracts described in the deed from Dicken to Cline); that it is situated about 9½ miles east of Hillister in Tyler county; that immediately after this tract was partitioned to his wife he began to pay taxes on same and to exercise ownership over it; that he sold the timber on it about 1901 to William Cameron & Company; that the timber was sold off of it once or twice after that date; that from the year 1893 up to the time he sold this land about five years before the trial he had paid the taxes on same, sold timber from it, and exercised exclusive ownship over it, and never heard of the assertion of any adverse title; that the land in controversy was awarded to Henry A. Cline, and that he bought it from Cline about the year 1895; that during the time he owned this land he never heard of any adverse ownership, and as attorney for the Cline estate for a number of years, he never heard of any adverse claim on the part of anybody to this land; that as attorney for the Cline estate he had occasion to investigate the titles to different tracts of land, and he did not find any adverse claim of any nature or description by any living human being to the Ann Fisher tract.

"H. W. Bendy, Jr., testified that his father lived in the town of Woodville in 1860, and in 1865 he moved to Alabama; that about the year 1869 he moved to the county of Jasper, and lived there until he died about the year 1883; that he had lived in Tyler county continuously since the year 1884 to the time of the trial, with the exception of two years that he lived in Orange and two years that he lived in Lampasas.

"Facts Showing Nonclaim by Appellee.

"The appellee H. W. Bendy testified that he never did have any part of the land in controversy assessed for taxes for the H. W. Bendy estate, and he never assessed it for taxes himself; that with the exception of two years he lived in Orange and two years he lived in Lampasas he had lived in Tyler county all the time since 1884.

"Appellants offered in evidence the inventory and appraisement of the estate of H. W. Bendy, Sr., presented by Clara A. Bendy, administratrix, and sworn to by her on the 9th day of September, 1884, being filed in the probate court of Jasper county, September 9, 1884. This inventory showed in addition to other property nineteen tracts of land in Tyler county and certain lots and blocks in the town of Woodville, but contained no reference whatever to the land in controversy.

"Appellants offered in evidence inventory and appraisement of the property of the estate of H. W. Bendy filed in the probate court of Jasper county July 27, 1885, and sworn to by Harry W. Bendy, the administrator. This inventory showed a number of tracts of land in

Tyler county and lots and blocks in the town of Woodville, but contained no reference to the land in controversy.

"Appellants offered in evidence additional inventory and appraisement of property of the estate of H. W. Bendy filed in the probate court of Jasper county, March 19, 1887, and sworn to by H. W. Bendy, administrator, March 18, 1887. This inventory contains several tracts of land in Jasper county, but makes no reference to the land in controversy.

"Appellants offered in evidence the partition decree made in the estate of H. W. Bendy November 22, 1889, ordering a partition of the estate of the said Bendy among the widow and the heirs of the said Bendy, which judgment recites among other things, 'That no necessity exists for the longer continuance of said administration of said estate.' Said decree appoints commissioners of partition and orders H. W. Bendy, the administrator, to make and render and file a full and complete exhibit and account of the condition of said estate. Appellants also introduced the report of the commissioners of partition in the estate of H. W. Bendy setting aside to the widow and heirs of said estate, including H. W. Bendy, Jr., various tracts of land in Tyler and Jasper and other counties, which report of the commissioners was sworn to and filed January 30, 1890, and contains no reference to the land in controversy.

"Appellants also offered in evidence copy of the decree of partition made in the estate of Margaret Bendy, the first wife of H. W. Bendy, wherein partition was made of said estate between H. W. Bendy, her surviving husband, and the heirs of Margaret Bendy, deceased, including H. W. Bendy, Jr. This decree of partition distributes and sets aside various tracts of land in Tyler, Jasper, and other counties, but contains no reference whatever to the land in controversy."

Appellants also offered the partition judgment in the case of Olive M. Dies to J. F. Heard, rendered at the December term, 1893 of the district court of Tyler county, the same being a partition of the estate of W. B. Cline, deceased, among his heirs and which judgment set apart to Henry A. Cline the land in controversy. Beginning with the deed from Henry A. Cline to Martin Dies, dated the 4th day of December, 1885, appellants offered a regular chain of title to themselves, consisting of about 18 warranty deeds duly executed and duly recorded.

When appellants offered the sheriff's deed in evidence, it was received by the court over the following objections of appellee:

"First. Because no valid authority has been shown by which the sheriff was by law authorized to make the sale recited in the deed, in that there is no proof showing the issuance of a valid venditioni exponas.

"Second. Because it appears that the term of office of Mr. Dicken, who purports to have executed the deed offered in evidence, as sheriff, had expired before the execution and delivery of said deed, and he was not authorized by law to execute and deliver the same.

"Third. Because if he were permitted to execute and deliver the same, the recitals made by him therein, not being the recitals of an officer, under the law, and under the obligations of oath and bond, would be merely hearsay statements, and not statements of an officer clothed with the verity that is accorded, in some instances, to the recitals of officers in the discharge of their duty; and therefore such recitals are not admissible in evidence as against the plaintiffs in this cause."

At the conclusion of the evidence, appellee renewed his objections to the deed, and moved to strike it from the record, which motion was granted on the following additional objections:

"For the reasons theretofore stated in objecting to the admission of said deed in evidence, and because the same was irrelevant, immaterial, and prejudicial, and because it did not appear to be supported by any writ of execution that could lawfully have been issued, under the judgment referred to, against the individual property of H. W. Bendy, or by virtue of any levy that might lawfully have been made upon said property of said Bendy, under said writ of execution, and because the evidence in the record fails to show that any writ of fieri facias was issued authorizing the making of said sale under the original levy purported to have been made under said original execution, but, on the contrary, affirmatively shows that no such writ was issued; and the court after hearing the argument upon said motion, sustained the same and struck out and excluded said deed from evidence."

In addition to the objections thus urged by appellee against the sheriff's deed, at the time it was excluded, he now urges the following additional objections not urged in the trial court, to wit: That a copy and not the original was offered in evidence; that it did not come from the proper source, and was not free from suspicion. The foregoing statement is sufficient to review the propositions urged by the parties on the exclusion of the sheriff's deed.

[6] So far as the merits of this appeal are concerned we cannot consider the objections urged now by appellee for the first time. Ardoin v. Cobb (Tex. Civ. App.) 136 S. W. 271. Appellee insists that, when evidence is excluded, the ruling of the court should be sustained if for any reason apparent on the record, whether urged or not, such ruling was right, and that the rule announced in the case just cited applies only when the evidence is admitted. We do not agree to that proposition. The rule is as potent in relation to excluded testimony as that received. If the objections urged now for the first time had been urged in the trial court, and if the grounds urged in fact existed at the time the exception was taken, for all this record shows appellants might have been able to strengthen their case on the points thus made, thereby eliminating the objections.

[7] But in view of another trial, it is proper that we dispose of the contentions urged by appellee in the additional objections.

The record does not show that appellants did not offer the original sheriff's deed. The bill of exception recites that appellants "offered in evidence deed executed by R. N. Dicken, sheriff of Tyler county, Texas, to W. B. Cline." When the only description of the offered instrument is that of a "deed," and inference arises that the original and not a copy was offered. Thus the burden rests on him who asserts that it was a copy to make the record reflect his contention. Ardoin v. Cobb, supra. But appellants' case would not have been weakened had the record shown affirmatively that a record copy and not the original was offered.

[8] The record of a deed raises the presumption of its delivery, and a certified copy of a deed which has been of record for fifty years is of equal dignity with the original deed itself. On this issue, our Supreme Court said, in Holmes v. Coryell, 58 Tex. 686:

"The deed must come from the proper custody, among other reasons, mainly that its delivery may be evidenced by the possession of a person claiming under it. The fact that it was recorded raises the presumption that it was delivered.

"The record made in 1843 evidences with more certainty than the original deed would, if produced, that the deed was more than thirty years old; for skillful, indeed, would be the spoliation of a record book which could not be detected. It comes free from suspicion upon any just ground, with strong facts corroborative of its genuineness."

[9] Thus the offering of a certified copy of a deed which had been recorded for fifty years with the proof of long-continued claim, a holding under recorded deeds of general warranty, and the assessment and payment of taxes, would obviate the objection that it did not come from the proper source. As we understand, appellee bases his contention that the deed was not free from suspicion on the grounds that it bore no date, that it was not signed officially by the sheriff, and that it was executed and acknowledged by him after the expiration of his term of office. We agree with appellee that, nothing appearing to contrary, a presumption arose that the deed was executed on the day it was acknowledged, so we assume that the deed was executed by Mr. Dicken on the 8th day of July, 1873, the day he acknowledged it.

[10] But assuming that he sold this land to Cline under legal process at a time when he was the sheriff of Tyler county, and neglected or refused or failed for any reason to execute and deliver him a deed while he was sheriff, he had the authority to execute and deliver it after the expiration of his term of office. Flemming v. Powell, 2 Tex. 225; Higgins v. Bordages (Tex. Civ. App.) 28 S. W. 351. His act in executing the deed was only ministerial. Leland v. Wilson, 34 Tex. 79. It is our conclusion that no inference of suspicion should be drawn from the facts as reflected by the record.

[11, 12] A sheriff's deed, though an ancient instrument, is not admissible in evidence unless it is supported by the judgment and execution authorizing the sale. Tucker v. Murphy, 66 Tex. 358, 1 S. W. 76. But when it is shown that the original papers, the judgment, and the execution are lost, or a sufficient reason is given explaining the failure to produce them, then a sheriff's deed over 30 years old, coming from the proper custody and free from suspicion, is admissible as an ancient instrument, and the recitations made by the sheriff in his deed are admissible as evidence to prove the authority under which the sale was made, and unless the prima facie case thus established is rebutted, the deed and its recitations are sufficient to vest in the grantee under the sheriff's deed the interest in the land so sold owned by the defendant in the execution. Humphreys v. Green (Tex. Civ. App.) 234 S. W. 562; Magee v. Paul, 110 Tex. 470, 221 S. W. 254; Sandmeyer v. Dolijsi (Tex. Civ. App.) 203 S. W. 113; Condit v. Galveston City Co. (Tex. Civ. App.) 186 S. W. 395; Ardoin v. Cobb (Tex. Civ. App.) 136 S. W. 271, annotation 6 A. L. R. 1437; Wacaser v. Bank (Tex. Civ. App.) 172 S. W. 737; Smitherman v. Lumber Co. (Tex. Civ. App.) 130 S. W. 633; Williams v. Cessna, 43 Tex. Civ. App. 315, 95 S. W. 1109; Giddings v. Day, 84 Tex. 606, 19 S. W. 682; Ruby v. Von Valkenberg, 72 Tex. 459, 10 S. W. 514; White v. Jones, 67 Tex. 638, 4 S. W. 161; Johnson v. Timmons, 50 Tex. 537; Garner v. Lasker, 71 Tex. 431, 9 S. W. 332; Gillean v. Witherspoon (Tex. Civ. App.) 121 S. W. 914; Dutton v. Wright, 38 Tex. Civ. App. 372, 85 S. W. 1025; Sydnor v. Savings & Real Est. Ass'n, 42 Tex. Civ. App. 138, 94 S. W. 451; Wilson v. Snow, 228 U. S. 217, 33 Sup. Ct. 487, 57 L. Ed. 807, 50 L. R. A. (N. S.) 604.

Appellee would meet the proposition just announced by saying that a sheriff's deed is not admissible unless the proponent of the deed shows the loss of all the records or excuses his failure to produce them, which the law requires the clerk to keep, evidencing the issuance of execution, and as the law at the time of the sale of the land in controversy by the sheriff required the clerk to keep an execution docket and to enter thereon a record of all executions issued by him, and as the clerk did in fact keep such a docket, which was offered in evidence in the case, and which did not show the issuance of venditioni exponas, therefore he concludes that no proper predicate was laid for the admission of the sheriff's deed. We cannot agree to this proposition.

[13] When the judgment and the execution with its return were offered in evidence, and the venditioni exponas was not found after due search, the proponents of the deed

had the right to resort to other evidence to establish its execution by the clerk, the delivery to the sheriff and its due execution by him. If the execution docket had shown that the writ was issued, it would have been original evidence of that fact. Portis v. Ennis, 27 Tex. 578, Schleicher v. Markward, 61 Tex. 99. In view of the statutory duty of the clerk to enter the writ of venditioni exponas on the execution docket, appellee asserts a sound proposition when he says that a presumption arises that the writ was not issued, because it is not shown on the docket. The rule contended for by him is thus announced in 9 Enc. of Evidence, p. 952:

[14] "Where a record is required to be kept by a public officer, the presumption is that he has done so, in accordance with the law." As against the negative showing of the docket, this presumption is not conclusive as a matter of law, but is one of fact only, and subject to rebuttal. This is recognized by our Supreme Court in Richards v. Rule, 207 S. W. 912:

[15, 16] "Whether the sheriff's deed was or was not executed by virtue of the requisite authority may be established by competent secondary evidence, and the question is not foreclosed by the fact that the execution docket contains no entry of the issuance of an order of sale."

Again, in Randall v. Collins, 52 Tex. 442, our Supreme Court, discussing the negative showing of a record which the law requires a public official to keep, said that it was "more in the nature of a negative presumption or inference of fact, legitimate in argument before the jury, than a presumption of law," citing Johnson v. Timmons, 50 Tex. 535. Relying on Tucker v. Murphy, supra, appellee makes the negative showing of the execution docket of equal dignity with a negative showing of the minutes of a court. There is this vital distinction between the two records: The execution docket is kept by the clerk only as evidence of writs issued under the judgment, and as an additional protection to those whose titles rest on judicial process. His failure to keep that record does not impair the validity of the execution issued, nor affect the authority of the sheriff to execute it. But a court of record can speak only through its minutes. "The acts of a court of record are known by its minutes alone." 7 R. C. L. 1018. Then, ordinarily, when a writ of execution is offered, describing a judgment which has not been entered on the minutes, a conclusive showing has been made against its validity.

[17, 18] The execution docket on its negative showing was therefore only an evidentiary matter to be considered by the court or jury in connection with the other facts in the record on the issue of whether or not the writ

of venditioni was issued, and, in view of the negligent manner in which this docket was kept (Wilson v. Snow, 228 U. S. 217, 33 Sup. Ct. 487, 57 L. Ed. 807, 50 L. R. A. [N. S.] 604), we are clearly of the opinion that appellants raised an issue in support of their deed and its recitations, and that the court erred in excluding it. Appellants contend that a writ of venditioni exponas is not an execution in the meaning of the statute requiring the clerk to keep an execution docket. We do not agree with them on this proposition. As we understand the nature of the writ, it is an execution, and due record of its issuance and of the sheriff's return thereof should be made by the clerk on his execution docket as in the case of ordinary executions. Pierson v. Hammond, 22 Tex. 585. For the error in excluding the deed, this cause must be reversed and remanded for a new trial.