158 So.2d 405 (1963)
Succession of Rose Von Dreis OROSZY, Plaintiff and Appellee,
v.
Herman BURKARD et al., Defendants and Appellants.
No. 935.
Court of Appeal of Louisiana, Third Circuit.
December 3, 1963.
*406 Edwards & Edwards, by Edwin W. Edwards, Crowley, for defendants-appellants.
Bruner, Mayeux & Landry, by J. W. Landry, Jr., Crowley, for plaintiff-appellee.
Lawrence G. Pugh, Jr., Crowley, for defendants.
Before SAVOY, FRUGE and HOOD, JJ.
HOOD, Judge.
This is an action for a declaratory judgment interpreting certain provisions of the last will and testament of Mrs. Rose Von Dreis Oroszy, deceased. The suit was instituted by the Bank of Commerce & Trust Company of Crowley, as the executor of the will, against all of the surviving collateral relatives of the decedent. Plaintiff alleges, and it is apparent from the record, that a controversy has arisen between the executor and the defendant heirs as to whether the remainder of the decedent's net estate, after distributing the special legacies, should be delivered to the defendant heirs, or should be delivered to the Bank of Commerce & Trust Company, as trustee under a charitable trust created by the will. The answer to that question depends largely upon a determination of whether a charitable trust was or was not established by the will.
After trial on the merits, judgment was rendered by the trial court decreeing that a valid trust, in accordance with the provisions of LSA-R.S. 9:2271, was created under the will, ordering that plaintiff bank be confirmed as the trustee, and authorizing the executor to deliver to said trustee all of the remainder of the funds and property belonging to the estate after paying all claims and special legacies. Defendants have appealed.
*407 The testament involved here is in olographic form, written in pen and ink on four pages. The first page and the last page are on ruled paper, and they are joined together so as to form one long sheet, folded so that it forms two legal size pages. The second and third pages of the will are written on two separate sheets of unruled legal size paper, and these two sheets have been inserted between the first and last pages of the testament. All of the writing on these four pages is in the hand of the testatrix, except for the signatures of four witnesses which appear in two places on the document. There is no contention that the signatures of these witnesses in any way affect the validity of the will.
Defendants do not attack the validity of the entire will. They do contend, however, that portions of the testament are invalid or have been voided by the testatrix, and they disagree with plaintiff as to the interpretation which should be placed on some of the remaining portions of the will.
Defendants contend primarily that several paragraphs on pages two and three of the will have been voided by "X" marks made on those pages by the testatrix, and accordingly, that the paragraphs so marked out cannot be considered as parts of the will.
There are six paragraphs on page two of the testament, and practically all of the writing on that page is in green ink. On this page there appear three or four large "X" marks, written very lightly with a lead pencil. These marks are so faint, and appear to have been written with so little pressure on the pencil, that it is difficult to see them at all or to locate them on the page. Because of the faintness and irregularity of these marks, it is difficult, if not impossible, to determine where a line begins or ends, but generally it appears that one "X" mark partially covers the first paragraph and one covers a part of the last paragraph of that page. The remaining pencil marks are so indistinct that it is difficult to determine whether they were intended as one or two "X" marks, but generally they appear to cover parts of the third paragraph on that page. The marks which defendants have pointed out on page three of the will are of the same type as those appearing on page two, but they affect provisions of the will which relate only to a special legacy or to other matters which are not at issue here. It is immaterial to this case, therefore, whether any effect is given to the marks appearing on page three.
In Succession of Butterworth, 195 La. 115, 196 So. 39, the only case cited and relied on by defendants, double lines had been drawn through the words "also my undivided interest in timber lands," which words were included as a part of the description of property being bequeathed to a trust estate created by the testatrix's olographic will. The question presented was whether the marking out of these words, by drawing lines through them, had the effect of eliminating the timber lands from that particular bequest. The evidence, including the testimony of a handwriting expert, showed that the lines had been drawn by the hand of the testatrix and that it was her intention in doing so that the timber lands were not to be included in the trust so created. Under those circumstances our Supreme Court held that the "erasure" should be given effect, notwithstanding the fact that the testatrix had failed to approve the "erasure" in writing, as required by LSA-C.C. Article 1589.
We agree with defendants that a testator, by drawing lines through words or over some writing in his olographic will, may cancel portions of the will or he may revoke it in toto, provided that the evidence establishes that the lines were drawn by the hand of the testator and that in doing so the testator actually intended to cancel or revoke all or specific portions of the will.
In the instant suit the evidence does not show that the "X" marks hereinabove described were made by the testatrix. On *408 the contrary, the nature of the marks themselves indicates that she did not make them. Since all of the other writing by the testatrix was in pen and ink, it seems improbable that she would have used such faint and almost imperceptible pencil marks to void important provisions of the will if she in fact intended for those marks to have that effect. Also, there are other light pencil marks on the will, including two question marks on the margin of page two and a circle around a few words on page three, which it seems unlikely would have been made by the testatrix. But, even if the "X" marks pointed out by defendants had been made by the testatrix, the marks themselves do not indicate an intention on her part to revoke or void any provision of the will and, as has already been pointed out, there is no evidence in the record which in any way tends to show that the testatrix had such an intent.
We conclude that the penciled "X" marks appearing on pages two and three of the will do not have the effect of voiding any part of the testament, and that those particular marks must be ignored in considering the validity or interpretation of that document.
Defendants contend next that pages two and three of the will are invalid for lack of definite dates. No question is raised about the first and last pages of the testament, each of which is dated February 26, 1960. There is no legal requirement, as far as we know, that every page of an olographic will be dated, and we do not mean to imply here that there is any such requirement. We feel that the defendants' argument must be considered, however, because it actually challenges the validity of the entire will on the ground that it lacks a certain date, although defendants, claim that only a part of the will should be ignored.
An examination of the testament reveals that pages two and three were originally dated in four different places, once on page two and three times on page three. In each of those places, however, the original or earlier date has been marked out or obliterated by a line drawn through it, and the date February 26, 1960, has been written just after or above the marked out date.
At the bottom of page two of the will, for instance, there appears the date "4/17/56," but that date has been marked out by a line drawn through it, and immediately above the original obliterated date the testatrix has written "2/26/60."
Near the top of page three of the will, the testatrix wrote:
"This last will and testament was entirely written in my own hand, dated and signed at Crowley, Acadia Parish, Louisiana, this 17th day of April, Nineteen hundred and fifty six (1956) February 26, Nineteen hundred and sixty (1960)."
As is hereinabove shown, the earlier date appearing in that paragraph has been marked out by a line drawn through it, and the later date was written immediately following the lined out words.
Near the middle of page three there appears the date "4/17/1956," which date has been lined out and above it is written "2/26/60." And, finally, at the bottom of page three the date "Oct 6th1959," has been lined out and above it there has been written "Febr 26, 1960."
Page one of the will was written in black ink, and that page is clearly dated February 26, 1960. Substantially all of page two and the first half of page three of the testament were written in green ink. And, the last half of page three was written in blue ink. We note that in each of the four instances where the earlier date was marked out and a new date was substituted, on page two and page three, the new date, February 26, 1960, was written with the same black ink as was used by the testatrix in writing page one of the will. Also, the same black ink was used in lining or marking out each of the earlier dates which appeared on those two pages. In view of these facts, and since the parties admit that all of these dates were *409 written by the hand of the testatrix, we are convinced that the testatrix actually marked out the earlier dates and substituted the new one, February 26, 1960, with the intention of making this last-mentioned date the date of the will.
We think the trial judge correctly analyzed the facts in his excellent reasons for judgment, as follows:
"* * * Mrs. Oroszy wrote more than one will and attempted to combine the instruments at a later date in order to give meaning and effect to her intentions. One instruments was probably written on April 17, 1956, a portion of which is contained on Pages 2 and 3 of the instrument.
* * * * * *
"The Court is of the opinion that in February of 1960, Mrs. Oroszy, feeling that she did not have too much longer to live, reviewed her business, including her desire to die testate, and at that time destroyed Page 1 of the instrument which she wrote in 1956, and substituted therefor Page 1, as it is now. At that time, she must have felt that it was necessary that the entire instrument bear the same date, hence the striking out of the earlier datings and the insertion of `Feb. 26, 1960' throughout the instrument."
There are a number of well settled principles of law which we think are applicable here. One of them is that an olographic testament which bears two or more different dates, and otherwise is valid, will not be annulled on the ground that there is no certainty as to the date, because in such instances it must be supposed that the testator either employed several days in making the will or wrote the will partially on one date and partially on another. Succession of Cunningham, 142 La. 701, 77 So. 506; Picard v. Succession of Picard, 179 La. 746, 155 So. 11; Love v. Dawkins, 222 La. 359, 62 So.2d 399. An olographic will does not have to be written in its entirety on the same date and in the same color or type of ink. Succession of Smart, 214 La. 63, 36 So.2d 639. And, the date written by the testator need not be written at the same time as the text of the will was written, the law requiring only that the testator himself place the date on the will. Succession of Jones, La.App., 2 Cir., 38 So.2d 797; Jones v. Kyle, 168 La. 728, 123 So. 306.
Also, as has already been pointed out, lines drawn through certain provisions of an olographic will may have the effect of cancelling or revoking those particular provisions, provided that the evidence establishes that the lines were drawn by the hand of the testator and that the testator in drawing them actually intended to cancel or revoke those specific portions of the will.
Applying these rules to the instant suit, we think it is clear that the testatrix intended to strike out, cancel or revoke the earlier dates appearing on pages two and three of her will, and to substitute in their stead February 26, 1960, as the date of her last will and testament. It is immaterial whether this later date was written at the time the text of pages two and three were written, or whether portions of the will were written at different times. We conclude that no part of the will involved here is invalid for lack of a certain date.
The next and final issue presented is whether the language used in the will involved in this suit is sufficient to create a valid trust under the provisions of LSA-R.S. 9:2271 et seq. The provisions of that will which are pertinent to this issue read as follows:
"I appoint and designate the Bank of Commerce executor of this my last will and testament. They are to serve in said capacity with the usual compensation and grant them seizen of my estate from the moment of my death.
"My wish and hope is that this will form a trust fund which is to be loaned *410 for worthy girls and boys with nominal interest who wish to go to collage.
* * * * * *
"This money is to be loaned on a yearly basis and continue as long as they wish to go and provided their grades are passing grades. The total endebtedness is to be paid back to the trust fund within five years after either quiting or finishing college.
"This repaid money can then be used to aid others and so on. Some may fail in their obligations but most will repay.
"The Bank of Commerce can use their judgment as time goes on as to how much each girl or boy is to receive. That depending on normal requirements and the value of money. The Bank of Commerce can also use their judgment as to when or how to dispose of the property or to rent or lease the property. However, I would like Ilona Oroszy to be compensated for her share of the estate as soon as possible so that she can enjoy same. Unless she should decide to leave it in the trust and receive ¼ compensation. This may require the sale of one piece of property or more as the Bank sees fit.
* * * * * *
"I would like to emphacize that the sex, of the girl or boy, the course selected or the school desired should be left entirely to the student provided the school is in Louisiana."
In other parts of the will the testatrix provides for the payment of debts and for two special legacies affecting only a very small part of her estate. Except for the above-quoted provisions, there is nothing in the will which purports to dispose of the remainder of the property belonging to the estate after the payment of debts and the special legacies. The testatrix states in her will that she has no children, and no brothers or sisters, that she was never adopted and has never adopted anyone, and that her parents both predeceased her.
Plaintiff contends that the provisions of the will hereinabove quoted have the effect of creating a trust for educational or charitable purposes, under the provisions of LSA-R.S. 9:2271 et seq. Defendants, on the other hand, contend that a valid trust was not created by the will because: (1) the language used in the will relating to the creation of a trust is merely a precatory suggestion, and consequently it must be regarded as not written; (2) the testatrix did not appoint or designate a trustee to administer the trust funds or property; and (3) the testatrix has made no donation or bequest to plaintiff bank or to anyone else, as trustee.
LSA-R.S. 9:2271, relating to the creation of so-called charitable trusts, provides in part that:
"Any person may make a donation inter vivos or mortis causa to a trustee or trustees either for the benefit of educational, charitable, or literary institutions existing at the time of the donation or thereafter to be founded or for educational, charitable, or literary purposes generally without designating the particular purpose to be fostered. * * *"
And, LSA-R.S. 9:2275, provides:
"When the donation is made to individual trustees, they and their successors, upon complying with the laws relative to the organization of corporations for literary, scientific, religious, and charitable purposes, shall constitute a body corporate with the power of continuous succession and unlimited duration, and with all the powers conferred upon corporations by law and by custom; * * *."
In view of these statutory provisions, we agree with defendants that in order to create a charitable trust under LSA-R.S. 9:2271 et seq., there must be a donation to a trustee or trustees.
The law also provides that in the interpretation of wills, "[T]he intention of the *411 testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament," and that "[a] disposition must be understood in the sense in which it can have effect, rather than that in which it can have none." LSA-C.C. Articles 1712 and 1713.
If defendants' position is upheld here, it will mean that all of the abovequoted provisions of the will, relating to the forming of a trust fund and the purposes for which such fund is to be used, will be brushed aside as a precatory suggestion and will be given no effect. We think the law requires that these provisions be given effect if it is determined that that was the intention of the testatrix, and if they can be given effect without departing from the proper signification of the terms of the testament.
In Succession of Rougon, 223 La. 103, 65 So.2d 104, our Supreme Court held:
"It is fundamental that in the interpretation of a last will the intention of the testator is all important and controlling and the ascertainment of it must be undertaken, without departing, however, from the proper signification of the terms of the testament. * * *"
And, in Succession of Price, 202 La. 842, 13 So.2d 240, the same court said:
"To determine the intention of the testator the whole will is to be taken into consideration. Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. Succession of Allen, 48 La.Ann. 1036, 20 So. 193, 55 Am.St.Rep. 295; Gueydan v. Montagne, 109 La. 38, 33 So. 61; Succession of Fath, 144 La. 463, 80 So. 659. No part of the testament should be rejected, except that which the law makes it necessary to reject. Succession of La Barre, 179 La. 45, 46, 153 So. 15."
In the instant suit we have endeavored to ascertain the intention of the testatrix, as required by Article 1712 of the LSA-Civil Code, with the result that we have become convinced, as was the trial judge, that Mrs. Oroszy intended (1) to create a trust fund for the purposes set out in the will, (2) to designate the plaintiff bank as the trustee, and (3) to donate the residue of her estate after the payment of debts and special legacies to the trustee.
We find no merit to defendants' argument that the words "wish" and "hope" are precatory. While it is true that either or both of those words may be used in such a way as to constitute a part of a precatory suggestion in a will, it is also true that the same words, depending on the way they are used, may be mandatory or dispositive. The word "wish," in fact, is commonly used in making testamentary dispositions. In Succession of Rougon, supra, for instance, our Supreme Court held that provisions of a will in which the words "wish" and "desire" were used were not mere precatory suggestions, but that the bequests expressed in those words were couched in "language ordinarily and usually dispositive."
In our opinion the rule which should be applied here was correctly stated in Heikamp v. Succession of Solari, La.App., Orl., 54 So.2d 347, as follows:
"It is our opinion that neither the Ledbetter case nor any other case has laid down, or could lay down, a fixed rule that the word `wish' should always be interpreted as disposing of property, or, on the other hand, that it should always be interpreted as precatory. The entire context of every will must be taken into consideration and from the whole document it must be determined whether the expression of the wish was intended to be merely precatory or was intended by the testator to actually dispose of the property."
We think the will as a whole must be considered in the instant suit in determining *412 whether the words, "My wish and hope is that this will form a trust fund * * *," constitute a precatory suggestion or a mandatory provision of the will. After considering the entire will, we conclude that the testatrix, in making that stipulation, intended to create a charitable trust, and that the language which she used, including the words "wish" and "hope," constitute a mandatory provision of the will.
Defendants contend, however, that regardless of what the testatrix intended, there is no provision in the will designating plaintiff as the trustee, and the testatrix did not donate any part of her estate to plaintiff, as trustee or in any other capacity. They argue that under those circumstances the will cannot be interpreted as creating a valid charitable trust without departing from the proper signification of the terms of the testament, in violation of Article 1712 of the LSA-Civil Code.
In the case of In re Succession of Abraham, La.App., 3 Cir., 136 So.2d 471, the testatrix bequeathed the remainder of her property to a residuary legatee with the provision that it was to be used only for a certain purpose. In making that bequest she did not use the words "trust" or "trustee," although in other parts of the will she did refer to the same legatee as "trustee" in connection with special bequests made to him. In determining that that bequest created a charitable trust, with the residuary legatee as trustee, we held that it was not essential for the testatrix to use the word "trust" in order to create a charitable trust under LSA-R.S. 9:2271 et seq. We said, "If the will clearly shows that the testatrix intended to create such a trust, and the manner of creating it and the purposes for which it is set up are in compliance with the laws on that subject, then we think the will must be interpreted so that the intent of the testatrix is carried out."
In Wilbert v. Wilbert, 155 La. 197, 99 So. 36, the testator in his will appointed his four brothers as "executors, with seizin and without bond, to handle, manage and conduct all of my affairs" in certain companies and property theretofore owned by the decedent. Although the words "trust" or "trustee" were not used, our Supreme Court held that a trust was created by the will, with the four brothers being designated as trustees. In so holding, the court said:
"We are of the opinion that the intention of the testator to create a trust is manifested, not only by the language of the will, but by the state of facts shown to exist upon its face at the date of the will. The language of the will is not consistent with any other purpose. * * *
* * * * * *
"The fact that the four brothers of the testator are named merely as `executors' in said will cannot be construed as excluding the intention of the testator to create a trust estate to be managed by them as trustees.
* * * * * *
"`There is no legal obstacle to the same persons being appointed as executors and trustees. As a general rule, it may be stated that where the duties imposed on executors are active, and render the possession of the estate convenient and reasonably necessary, they will be deemed trustees for the performance of those duties to the same extent as though declared so to be in the most explicit terms.' 11 R.C.L. p. 21, citing Wilson v. Snow, 228 U.S. 217, 33 Sup.Ct. 487, 57 L.Ed. 807, 50 L.R.A. (N.S.) 604.
"It is rather the functions to be performed by the appointee in the will than the designated name of such appointee that determines his true fiduciary character.
"The extraordinary powers conferred upon the executors, so called, in said will, `of selling or disposing of the part of the estate placed under their separate control, is so foreign to the provisions of the Civil Code relating to *413 the administration of estates as to compel us to look for such authority under some other provision of the laws of this state. We find such authority only under the trust act of 1920. The unusual powers conferred upon the executors in the will necessarily imply that they are to exercise the powers of trustees conferred by said act."
And, in Succession of Fertel, 208 La.App. 614, 23 So.2d 234, our Supreme Court held:
"When a will is executed, a reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption that he intends to die intestate as to any part of his estate when the language he uses will clearly carry the whole."
In the instant suit, although the testatrix did not specifically appoint plaintiff as trustee in her will, we think the language used clearly shows that she intended to do so, and that she intended to bequeath to plaintiff, as trustee, the residue of her estate to be administered as directed in the will. As has already been pointed out, she appointed plaintiff bank as "executor" of the will, and granted it seizin of the estate from the moment of her death. Immediately following that appointment she stated that, "My wish and hope is that this will form a trust fund," and she then proceeded to stipulate that "The Bank of Commerce can use their judgment as time goes on as to how much each girl or boy is to receive," that "The Bank of Commerce can also use their judgment as to when or how to dispose of the property or rent or lease the property," and that "This may require the sale of one piece of property or more as the Bank sees fit." She also provided in the will that the amounts loaned were to be paid back "to the trust fund" in five years after quitting or finishing college, and that the money so repaid is to be used to aid others, all of which shows that she intended for the trust fund to remain in existence and to be administered for many years. And, finally, there is no other provision of the will which can be considered as a bequest of the remainder, or bulk, of her estate after the payment of debts and two small special legacies.
We feel, as did the Supreme Court in the Wilbert case, supra, that the designation of plaintiff bank only as "executor" of the will cannot be construed as excluding the intention of the testatrix to also appoint plaintiff as trustee to manage or administer the assets of the trust which she created. Considering all of the provisions of the will, we are convinced that the testatrix, in appointing plaintiff as executor and giving it seizin of her estate, intended also to designate plaintiff as trustee and to bequeath to it, as trustee, the residue of her estate.
For the reasons herein assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendants-appellants.
Affirmed.