180 So.2d 74 (1965)
Succession of Thomas R. GAFFORD.
No. 10431.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1965.
*75 Alton M. Richmond, Shreveport, for decedent, Thomas R. Gafford, defendant-appellant.
Gordon B. Golson, Jr., Mansfield, for Administrator, Frank W. Matthews, defendant-appellant.
Morgan, Baker, Skeels & Coleman, Shreveport, for plaintiff-appellee, Mrs. Wilma Louise Matthews Chatelain.
Johnston & Johnston, Shreveport, for plaintiff-appellee Willie M. Robinson.
Ike F. Hawkins, Jr., Shreveport for plaintiffs-appellees William M. Craig and Willie Mae Petes.
Robert E. Eatman, Shreveport, for appellee Versa Bell Dillon.
Charles B. Emery, Shreveport, for plaintiffs-appellees Absent Heirs.
Before HARDY, GLADNEY and AYRES, JJ.
GLADNEY, Judge.
Thomas R. Gafford died in Caddo Parish on April 7, 1963 and his succession was opened as intestate. Frank Matthews was appointed and qualified as administrator. Some months thereafter certain papers or documents bearing the handwriting of the deceased were found contained in a manila envelope in a box among the possessions of the deceased. These consisted of a paper which purported to be a last will and testament accompanied by two blank checks with writing on the reverse sides in the form of a codicil. These documents were presented to the court and were duly probated and recognized as the last will and testament of the deceased. The administrator opposed the validity of that portion of the will or codicil as written on the two blank checks and has appealed from the judgment sustaining the validity thereof.
Before this court appellant charges error in that the court determined: (1) The slashed date found on the blank checks or codicil was a date certain; and (2) that the purported legacies contained in the codicil were phrased in words indicative of testamentary dispositions. (3) Finally, counsel for the opponents attack the validity of the will or codicil on the ground that it was written on multiple pieces of paper, one of which was unsigned.
The testator's will bearing date March 23, 1951 as first written is not under attack. In this instrument the testator bequeathed all of his property to Mollie Louise Flanagan, who was named executrix. This document was later altered in the following respects: The original date of the will was struck through and the new date of September 14, 1960 was written in; *76 the name of Mollie Louise Flanagan was marked through and the name of Frank Matthews was inserted, instituting him the universal legatee, and appointing him executor; and, a notation was made on the back of the document, to-wit: "Changes occurred by the death of Louise Flanagan." The handwriting of the deceased appears also on the reverse side of two blank checks labeled "a" and "b" and bears the slant date "10/3/60." This writing purports to make particular legacies and are opposed as lacking words importing testamentary dispositions. The particular legacies are preceded by the words "Pay to * * *", and the residual legacy is prefaced by the phrase "The balance to be paid * * *." It is conceded that all of the papers and alterations thereon were made in the handwriting of and signed by the testator Thomas R. Gafford.
In the interpretation of a testament our law requires that the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the probable signification of the terms of the testament. A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none. LSA-C.C. Arts. 1712, 1713.
The Supreme Court was confronted with a "slash-date" olographic will dated "9/8/18" in the Succession of Beird, 145 La. 756, 82 So. 881, 6 A.L.R. 1452 (1919). Ruling that such a date was uncertain and insufficient to determine the testator's intention as to the exact date of his will and excluding extrinsic evidence, the Court said:
"* * * we have uniformly applied the rule of strict interpretation to wills, and to be valid, in the language of the Code, they `must be entirely written, dated and signed in the hand of the testator.' It is hardly necessary to mention the reasons for this strictness, especially as to date, considering, as we must, that a person has the right to make as many wills as he chooses, and that the last, under the law, at least in so far as it may conflict with prior ones, has the effect of revoking their dispositions. The date, therefore, must be certain and beyond speculation. * * *" [145 La. 756, 82 So. 881, 882]
This ruling was affirmed in the Succession of McCay, 166 La. 681, 117 So. 772 (1928) and Succession of Mutin, 232 La. 416, 94 So.2d 420 (1957). In an earlier decision, Succession of Lefort, 139 La. 51, 71 So. 215 (1916) extrinsic evidence was said to be admissible to prove the deceased had altered the date of the will by surcharge. This pronouncement was later characterized as obiter dictum and repudiated in the Succession of Mutin, supra. The court in the Succession of McCay, upon considering the ruling in the Succession of Lefort, observed:
"* * * extrinsic evidence as to date cannot be received. Neither a superscription of date on an envelope containing an olographic will, nor dispositions made in the will itself, can be resorted to as showing the intention of the testator as to date, if omitted from or not clearly appearing on the face of the testament." [117 So. 772, 773]
In accord with the above mentioned authorities are Succession of Mayer, La.App., 144 So.2d 896 (4th Cir. 1962) and Succession of Koerkel, La.App., 174 So.2d 213 (1st Cir. 1965). The latter decision overruled Succession of Gaudin, La.App., 98 So.2d 711 (1st Cir. 1957); 140 So.2d 384 (1st Cir. 1962). Firmly established, therefore, is the rule which will not permit admission of evidence to resolve the certainty of the date through evidence other than that appearing on the face of the testament.
During the course of the trial in the instant case evidence on behalf of one of the proponents of the codicil was tendered to show that the deceased habitually wrote checks in which he used slash dates, *77 the first digit of which represented the month. Such evidence was properly excluded by the trial court. As we construe the jurisprudence applicable to slash dates, reference may be had to the handwriting of the deceased appearing on the face of an olographic will for the purpose of ascertaining the date intended. Extrinsic evidence may not be resorted to.
Inspection of the writing on the sheets of paper questioned reveals the following facts which with certainty disclose that the slash date "10/3/60" can only be construed to mean October 3, 1960 and not March 10, 1960. Such inference logically follows. Mollie Louise Flanagan died some time prior to September 14, 1960, for it was on that day the testator altered his testament so it would reflect the changes in his testamentary intent occasioned by her death. Until this date it must be presumed that the testator desired that Miss Flanagan be his universal legatee and executrix. The existence of that intention is evidenced by the original testament; and the change of that intention is evidenced by the alterations of the testament on September 14, 1960. If the slash date on the codicil is read as March 10, 1960, it would mean the codicil was drafted prior to the death of Mollie Louise Flanagan, and prior to the alterations of the testament, and such an interpretation would be inconsistent with the testator's intention as clearly stated and unchanged before September 14, 1960. However, if the slash date is read as October 3, 1960 this construction gives to the codicil meaning. Manifestly, then it would have been drafted subsequent to the death of Mollie Louise Flanagan, which necessitated the changes in the will as first written. As so construed no extrinsic evidence would be resorted to for it is unnecessary to go beyond the document in question or the handwriting of the testator in proving the death of Mollie Louise Flanagan. Such a holding does not conflict with our established jurisprudential rule excluding extrinsic evidence. Accordingly, we construe the slash date 10/3/60 as being a date certain, that is, October 3, 1960.
No issue has been raised with respect to that portion of the date referring to the century and written by the deceased as "60". This results perhaps from the decision in the Succession of Kron, 172 La. 666, 135 So. 19 (1931) wherein the presumption of death after a century of life was held to prevail as a principle of law and the court found it unnecessary to express its view as to extrinsic evidence.
The second question argued is whether the words "pay to" are sufficiently dispositive to validate purported legacies appearing in the following portion of the codicil: "Frank, in settling my estate, my instructions are as followsPay to V. B. Dillon, W. M. Craig, Willie Mae Petev. $10,000.00 each. Willie M. Robinson $5,000.00. The balance to be paid to my first cousins on my mother's side of the family excepting N. B. Dillon and Ruth Dillon. The cousins participating will share and share alike. The diamond rings and diamond watch in my safety deposit box I will to Ruth Thigpen Matthews. My personal Guns & Clothing may be disposed of to your discretion."
In support of his position the opponent of the will cites Succession of Shows, La. App., 158 So.2d 293 (1st Cir. 1963); 246 La. 652, 166 So.2d 261. Therein the deceased simply wrote "all to my sister." The opinion by Chief Justice Fournet, relied upon Civil Code Art. 1570 and held the words of the testatrix did not comply with the codal article prescribing that the testament must "clearly establish that it is a disposition of last will." The instrument was found to be void of any language connotating a testamentary disposition of the decedent's property.
Herein we are called upon to decide whether the words "pay to" are sufficiently dispositive of the testator's property in the light of Codal Article 1570. The words "all to" which appeared in the will presented in the Succession of Shows contained no *78 verb, without which there could no be dispositive language. To the contrary the words "pay to" clearly manifests the intention of the writer to give and dispose of the sums named. Accordingly, we are of the opinion the legacies should be considered as valid testamentary bequests. Oroszy v. Burkard, La.App., 158 So.2d 405 (3rd Cir. 1963) supports this viewpoint. Therein the testatrix attempted to establish a trust to be used in granting scholarships. The opponents of the will contended the words "wish" and "hope" are precatory. In rejecting this contention the court said:
"We find no merit to defendants' argument that the words `wish' and `hope' are precatory. While it is true that either or both of those words may be used in such a way as to constitute a part of a precatory suggestion in a will, it is also true that the same words, depending on the way they are used, may be mandatory or dispositive. The word `wish,' in fact, is commonly used in making testamentary dispositions. In Succession of Rougon, supra, for instance, our Supreme Court held that provisions of a will in which the words `wish' and `desire' were used were not mere precatory suggestions, but that the bequests expressed in those words were couched in `language ordinarily and usually dispositive.'" [158 So.2d 405, 411]
Our conclusion is that the words "pay to" and "to be paid to" suffice as testamentary dispositive words.
The last argument of the opponent is that the codicil should be considered invalid by reason of the fact that it was written on two separate pieces of paper. This question appears to have been presented for the first time in the oral argument before this court. In this respect it conflicts with our established rule that issues raised for the first time in argument before an appellate court will not be considered. Further, we are cited to no authority for the contention so made. It is clear in the instant case, however, that the two pieces of paper in question give every indication of being a continuous writing. The handwriting of the testator is not questioned. An examination discloses that the papers were designated "a" and "b". Further, it is noted that the last words on "a" constitute the beginning of a sentence which is continued on page "b" without interruption in the meaning and content of the complete sentence. Accordingly, it is our opinion that there is no merit in the argument advanced.
It is our finding that the purported olographic last will and testament of the decedent, Thomas R. Gafford, is valid in all respects, and it follows that the judgment of the trial court is affirmed at appellants' cost.