# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-606

BRANDON BROUSSARD

VERSUS

RICHARD D. EBARE AND
NORBERT L. BROUSSARD

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2019-0370 DIV A
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, Jonathan W. Perry, and J. Larry Vidrine,[1] Judges.

**AFFIRMED.**

---

[1] Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**David L. Wallace**
**Attorney at Law**
**518 North Pine Street**
**DeRidder, Louisiana  70634**
**(337) 462-0473**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Richard D. Ebare**


**Michael S. Harper**
**Attorney at Law**
**105 North Stewart Street**
**DeRidder, Louisiana  70634**
**(337) 463-5532**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Brandon Broussard**


**Norbert L. Broussard**
**In Proper Person**
**425 Ike Broussard Road**
**DeRidder, Louisiana  70634**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Norbert L. Broussard**

**CONERY, Judge.**

Plaintiff Brandon Broussard filed suit against his uncle, Norbert Broussard, and Robert Ebare seeking to rescind Norbert's sale of property historically owned by the Broussard family to Mr. Ebare. Brandon sought enforcement of a right of first refusal purportedly conveyed by the Act of Donation by which Norbert acquired the tract. Mr. Ebare questioned the validity of the purported right of first refusal. Following a trial on the merits, the trial court determined that Brandon held an enforceable right of first refusal. The trial court therefore rescinded the sale, ordered the transfer of the property to Brandon, and ordered Brandon to place the sale price into the registry of the court. Mr. Ebare appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The 6.17 tract at issue in this matter was a portion of the immovable property owned by Isaac and Georgia Broussard of Beauregard Parish. In January 1995, Isaac and Georgia placed the subject property, along with other acreage, into "The Isaac Broussard and Georgia N. Broussard Revocable Living Trust Agreement." The Trust designated Isaac and Georgia as both trustees and beneficiaries. Georgia died in 2015.

On February 6, 2016, Isaac, as the sole trustee, executed a unified "Act of Donation" whereby he initially indicated that he was "desirous of transferring certain immovable property to their heirs as intended …." In the Act of Donation's succeeding pages Isaac "conveyed and donated" five tracts of immovable property, individually, to four of his children and to his grandchild, Brandon. The tracts ranged from 12-15 acres.

Isaac followed the property description of each tract with a second paragraph bearing identical language for each donated tract as follows:

> RESERVING unto himself the minerals from this tract. Also, it is the *desire* of the DONOR that if the DONEE of this tract ever sells, it will be offered to a member of the family first, asking not more than $2,000.00 per acre.

(Emphasis added.) Isaac's use of "desire" in creating the right of first refusal is now at issue in this case.

It is undisputed that each heir accepted the respective donations. Norbert, Brandon's uncle, accepted the 12.4 acre tract donated to him by signing an acceptance clause reading:

> AND NOW TO THESE PRESENTS comes NORBERT L. BROUSSARD, DONEE, herein who takes cognizance of the above Act of Donation, and accepts same with gratitude, acknowledging due delivery and possession thereof, in the presence of the undersigned witnesses, and me, Notary, on this 6th day of February, 2016, in DeRidder, Louisiana.

The Acts of Donation were recorded on February 11, 2016. *See* La.Civ.Code art. 2629.

This controversy arose when Brandon noticed survey stakes on Norbert's property in late November or early December 2018. As Brandon's property adjoined that of Mr. Ebare, Brandon stopped and informed Norbert that he would like to exercise his right of first refusal to purchase the property if Norbert was selling. Norbert was accompanied by Mr. Ebare, whose property also adjoined Norbert's property. Neither man acknowledged to Brandon that, in fact, they had discussed Mr. Ebare's acquisition of a 6.173 acre portion of the property, which is why the men were placing stakes in the ground. The record reflects that, pursuant to that proposed acquisition, Mr. Ebare paid for a survey of the property, which was completed on December 14, 2018.

2

Despite knowing that Brandon wished to purchase the property, Norbert and Mr. Ebare visited a notary on December 21, 2018 and Norbert executed a Cash Warranty Deed for the disputed 6.173 acres to Mr. Ebare. The Cash Deed reflects that Mr. Ebare paid $10,000 for the acreage. Neither Norbert nor Mr. Ebare recorded the deed at that time.

Three months later, on March 22, 2019, Norbert entered into an "Agreement to Purchase and Sell Vacant Land" with Brandon. The purchase agreement reflects that Norbert agreed to sell the 6.173 acres to Brandon in exchange for a sale price of $12,346. That sales price is in keeping with the $2,000 per acre price dictated by the Act of Donation. Brandon testified at trial that Norbert again did not tell him that he had executed a prior December 2018 Cash Deed to Mr. Ebare for the same property.

On March 25, 2019, three days after Norbert and Brandon entered into the Purchase Agreement, Mr. Ebare recorded the December 2018 Cash Deed. Brandon testified that he learned of the March 25, 2019 recordation when his attorney attempted to record the March 22, 2019 Purchase Agreement and discovered the Cash Deed, which had been recorded a few days earlier. The Cash Deed, of course, reflected the prior transfer of property from Norbert to Mr. Ebare.

Brandon filed the petition instituting this matter in April 2019, seeking rescission of the sale from Norbert to Mr. Ebare and specific performance in light of his right of first refusal encumbering the transfer of property to Norbert by the Act of Donation. Brandon named both Norbert and Mr. Ebare as defendants. Norbert did not initially appear at the trial on the merits held in June 2021. Norbert ultimately

3

appeared after a brief recess in trial, although he was unrepresented, offered no defense, and asked no questions of the witnesses.[2]

Brandon and Mr. Ebare both testified at trial and largely offered parallel accounts of the chronology of events. Mr. Ebare explained that he had not initially recorded the cash deed in an effort to save money.

The trial court offered oral reasons in ruling in favor of Brandon. The trial court rejected Mr. Ebare's argument that the right of first refusal was unenforceable due to its use of the term "desire," which Mr. Ebare's counsel described as "passive" rather than "mandatory." The trial court instead equated the use of the language to that of a will, explaining that: "It's like when you write a will, you said, 'it is my desire that, it is my wish.' It means it's binding and this language is the same or similar."

The trial court continued and recognized that Mr. Ebare was in an "unfortunate situation," but explained that had he used an attorney in the purchase of Norbert's property rather than a notary, the recorded Act of Donation, with its incorporated right of first refusal, would have been identified by a title search. She further explained that an attorney would have immediately recorded the Cash Deed. The trial court explained that she was therefore ordering the rescission of the sale and the transfer of the property to Brandon.[3]

---

[2] Norbert did not testify at trial and explained to the trial court that the "only thing" he wanted to say is that he "was manipulated by [his] neighbor, Mr. Ebare." Brandon testified that Norbert had recently acknowledged that he sold the property to Mr. Ebare and that he had "now apologized for it[.]"

[3] Although Mr. Ebare indicated that he had bartered a golf cart and a truck repair for an additional strip of land, the trial court explained that she could not order the return of those items as they were not reflected in the Cash Deed. Neither could she return the survey fee to him.

The resulting July 13, 2021 judgment reflected the trial court's reasons as it rescinded the sale and ordered Norbert to execute a Cash Warranty Deed conveying the subject property to Brandon within 30 days. The judgment further ordered Brandon to deposit $10,000 into the registry of the court upon execution of that Cash Deed. The trial court ordered that the court costs be split equally between Mr. Ebare and Norbert.

## ASSIGNMENTS OF ERROR

Mr. Ebare appeals, assigning the following as error:

1. The Trial Court misinterpreted the language contained in the Act of Donation as a right of first refusal.

2. The right of first refusal is a personal right and cannot be assigned to others.

Norbert does not appeal.

## LAW AND DISCUSSION

*Assignment of Error 1 - Act of Donation*

By this assignment of error, Mr. Ebare suggests that the trial court erred in determining that Isaac created an enforceable right of first refusal within the Act of Donation. As he did before the trial court, Mr. Ebare focuses on Isaac's use of the word "desire," and claims it was not sufficiently mandatory for the creation of the right. He contends that Isaac was merely expressing aspirational hope for future transfers of the property.

In this regard, Mr. Ebare quotes "Webster's Dictionary" without citation, urging that "desire" must be interpreted to mean "v.t. (1) wish or long for; crave, (2) ask for, solicit. – n. (1) a wish; craving, longing. (2) sensual feeling. (3) a request. (4) an object wished for." Mr. Ebare further contends that, "[i]t is clear that the

meaning of the clause was that the Donor wanted to try to keep the property in the family, if possible."

Mr. Ebare's argument requires consideration of the Louisiana Civil Code articles on the donation inter vivos, the tool chosen by Isaac for the transfers of property, and the right of first refusal, the right burdening the transferred property. Louisiana Civil Code Article 1468 defines the donation inter vivos as "a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it." As seen below, it is unquestioned that each of the heirs accepted the donation inter vivos with the understanding that Isaac burdened that transfer with the purported right of first refusal.

Louisiana Civil Code Article 2625 recognizes such a right, providing that: "A party may agree that he will not sell a certain thing without first offering it to a certain person. The right given to the latter in such a case is a right of first refusal that may be enforced by specific performance." On selling the subject "thing," "[t]he grantor of a right of first refusal may not sell to another person unless he has offered to sell the thing to the holder of the right on the same terms, or on those specified when the right was granted if the parties have so agreed." La.Civ.Code art. 2626.[4]

In the event a right of first refusal pertains to an immovable, as it does in this case, the contract must be in writing. *See Marler v. Jarrell*, 16-0685 (La.App. 1 Cir. 7/13/17) (an unpublished opinion)[5] (citing La.Civ.Code arts. 2623 and 2629), *writ*

---

[4] The Act of Donation, along with the incorporated right of first refusal was recorded, an important consideration as La.Civ.Code art. 2629 provides, in pertinent part, that "[a]n option, right of first refusal, or contract to sell that involves immovable property is effective against third persons only from the time the instrument that contains it is filed for registry in the parish where the immovable is located."

[5] 2017 WL 2982523.

6

*denied*, 17-1408 (La. 12/5/17), 231 So.3d 25. "The very purpose of the writing requirement for contracts regarding immovable property is to prevent misunderstanding over the verbal terms." *Id.* at 6 (citing *Rebman v. Reed*, 335 So.2d 37 (La.App. 4 Cir.), *writ denied*, 338 So.2d 699 (La.1976)).

In examining the right of first refusal within the context of the Act of Donation, the trial court found Isaac's use of the verb "desire" sufficiently clear so as to have created a valid right of first refusal. As the trial court noted, and as Brandon points out in his brief, testament cases have regularly determined that a word such as "wish" or "hope" may have an aspirational tone but is otherwise mandatory and dispositive when viewed within the appropriate context. *See, e.g.*, *Oroszy v. Burkard*, 158 So.2d 405, 411 (La.App. 3 Cir. 1963) (wherein a panel of this court explained that while "wish" or "hope" may be included as "part of a precatory suggestion in a will, it is also true that the same words, depending on the way they are used, may be mandatory or dispositive.") (citing *Succession of Rougon*, 223 La. 103, 65 So.2d 104 (1953)).

In *Oroszy*, 158 So.2d at 411-12, the panel explained that the "whole" of the testament "must be considered in the instant suit in determining whether the words, 'My wish and hope is that this will form a trust fund [],' constitute a precatory suggestion or a mandatory provision of the will." The panel thereafter concluded that, upon review of the entirety of the testament, "the testatrix, in making that stipulation, intended to create a charitable trust, and that the language which she used, including the words 'wish' and 'hope,' constitute a mandatory provision of the will." *Id.* at 412. *See also Succession of Baker*, 432 So.2d 817, 821 (La.1983) (wherein the supreme court examined the settlor's wording within a trust finding that the settlor's use of the "'may be used'" was dispositive rather than merely precatory

upon "a reading of the instrument as whole," as "it [was] clear that the settlor intended to impose an obligation on the trustee to spend the trust funds only on behalf of the beneficiaries described in Section 5.1.").

Although not a testament, the Act of Donation at issue in this case is similarly a distribution of the Trust's assets. A reference to the entirety of the Act of Donation proves fatal to Mr. Ebare's suggestion that Isaac's use of the term "desire" in the right of first refusal is merely precatory. Strikingly, Isaac first used the same term in the Trust's opening paragraph by which he evidence his intent. The Act of Donation reads,

> ISAAC BROUSSARD, the surviving Trustee of the ISAAC BROUSSARD and GEORGIA N. BROUSSARD, Revocable Living Trust, dated January 26, 1995 and recorded in Conveyance Book 602, page 111, under File No. 381867; amended by Amendment dated November 14, 2013, recorded in Conveyance Book 959, page 109, under File No. 52890, records of Beauregard Parish; (the said GEORGIA N. BROUSSARD died September 13, 2015) is **desirous** of transferring certain immovable property to their heirs as intended, as follows ....

(Emphasis added). The donation specific to each heir follows on the Act of Donation's succeeding pages, which reflect the individual donations, the respective property descriptions, and the identical right of refusal clauses included in each donation.

Pages 7 and 8 of the Act of Donation pertain to the donation to Norbert and read, in pertinent part,

> By this means, ISAAC BROUSSARD, as Trustee of the ISAAC BROUSSARD and GEORGIA N. BROUSSARD Revocable Living Trust, does hereby CONVEY and DONATE unto NORBERT L. BROUSSARD, as his separate property ... the following described property, situated in the Parish of Beauregard, to-wit:

8

> A part of the Southwest Quarter of Southwest Quarter (SW1/4 of
> SW1/4) of Section Eighteen (18), Township Four (4) South ....[6]
>
> RESERVING unto himself the minerals from this tract.  Also, it
> is the **desire** of the DONOR that if the DONEE of this tract ever
> sells, it will be offered to a member of the family first, asking not
> more than $2,000.00 per acre.

> Signed this 6th day of February, in the year 2016, in DeRidder,
> Louisiana, in the presence of the undersigned witnesses, and me, Notary,
> after due reading of the whole.

(Emphasis added.)  The document thereafter bears the signatures of Isaac, as trustee,

and the attending witnesses.  The acceptance clause follows by which Norbert

acknowledged the donation.[7]

Mr. Ebare cannot now suggest that Isaac's use of the same term, "desire," is

precatory in only the latter usage as it relates to the right of first refusal.   To argue,

instead, that the term is precatory on its face would of course call into question the

entirety of the donation given the term's presence in the opening paragraph.  Rather,

reference to the entirety of the document is informative here and is consistent with

La.Civ.Code art. 2050, which instructs that "[e]ach provision in a contract must be

interpreted in light of the other provisions so that each is given the meaning

suggested by the contract as a whole."

Additionally, to the extent Mr. Ebare may otherwise contend that Isaac's use

of the word "desire" casts "doubt" on the effectiveness of the right of first refusal,

---

[6] We omit here the entirety of the property description by metes and bounds as irrelevant for consideration of the parties' dispute.

[7] Norbert signed an acceptance clause indicating:

> AND NOW TO THESE PRESENTS comes NORBERT L. BROUSSARD,
> DONEE, herein who takes cognizance of the above Act of Donation, and accepts
> same with gratitude, acknowledging due delivery and possession thereof, in the
> presence of the undersigned witnesses, and me, Notary, on this 6th day of February,
> 2016, in DeRidder, Louisiana.

La.Civ.Code art. 2053 specifically provides that, "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." Importantly, Isaac made a great effort in confecting a single Act of Donation, expressing his "desire" to transfer his and Georgia's property to "*their heirs as intended*" and then specifically included a reservation of rights clause in each heir's respective donation, obviously requiring their acceptance and acknowledgement of the donation thereunder.

The trial court remarked upon Isaac's use of the separate, but interwoven donations to the five children and Brandon in finding that Isaac's language had created a "binding right of first refusal" and further explained that:

> [Pursuant to La.Civ.Code art. 2626,] "the grantor of a right of first refusal" - - which in this case is Norbert Broussard, "may not sell to another person unless he has offered to sell the thing to the holder of the right", which *in this case is other family members which at the very most I would say includes those on the act of donation*. The other family members. Mr. Broussard had the obligation to offer this to Brandon Broussard … [who] had already said that he wanted to purchase it and for whatever reason Mr. Broussard sold it to Mr. Ebare.

(Emphasis added.)

The trial court's finding in this regard is consistent with the Act of Donation read as a whole. While Mr. Ebare suggests that the use of "other family members" could prove unworkable as it could result in "dozens, hundreds or even thousands" of individuals, the trial court's resort to consideration of the overall structure and intent of the Act of Donation eliminates that speculation. Further, it is consistent with La.Civ.Code art. 2053's instruction to interpret a "doubtful provision," as provided above. Like the trial court, we find no merit in this argument.

10

Nor do we find merit in Mr. Ebare's final contention under this assignment of error by which he maintains that "with the Donor's desire to sell for not more than $2,000.00 per acre, the owner could potentially be forced to sell property that had appreciated greatly in value to a family member for an amount far below the market value." He asserts that such a requirement would require the donee to "hold the property and not be able to realize its true value. This result would ca[use] property to be taken out of commerce because of the language in the Donation." He suggests that such potential requires a reversal of the trial court's ruling.

To the contrary, that interpretation reflects Isaac's intent in inserting the right of first refusal into the donations to the family members, *i.e.*, to keep the property within the family as long as the family members chose. While Mr. Ebare contends that each donee would not be able to capitalize on a rising market, it is important to recall that each donee accepted their respective donation subject to the right of first refusal, which included the $2,000 limitation on valuation. They did so by signing the acceptance clause taking "cognizance of the above Act of Donation, and accept[ing] same with gratitude, acknowledging due delivery and possession thereof[.]" Although Mr. Ebare's hypothetical assumes that a donation must be unfettered by conditions such as those at issue in this case, La.Civ.Code art. 1528 specifically provides: "The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals." Simply, Isaac, as Trustee and donor, imposed on each heir the right of first refusal as described, and each heir accepted the gratuitous donation. Mr. Ebare, by extension, cannot now complain of the conditions Isaac placed thereon.

This assignment lacks merit.

11

*Assignment of Error 2 – Personal Right*

In his second and final assignment of error, Mr. Ebare notes that a right of first refusal is a personal right and suggests that Isaac could not assign that right. In support of this proposition, Mr. Ebare references Professor Saul Litvinoff's volume on Obligations from the 1975 edition of the Louisiana Civil Law Treatise. Brandon responds, however, explaining that Mr. Ebare's citation is to Professor Litvinoff's review of French law and that the Treatise is otherwise silent on whether Louisiana law permits the assignment of a right of first refusal. The parties' dispute as to the import of the 1975 Treatise is immaterial.

We have found above that the trial court correctly determined that Isaac created a valid, enforceable right of first refusal within the Act of Donation. To the extent Isaac then "assigned" that right by the donation, it is clear that the Louisiana Civil Code did not contain a legislative statement on the right of refusal until the legislature enacted La.Civ.Code art. 2625 by 1993 La.Acts No. 841, which became effective Jan. 1, 1995.[8]

Article 2625, set forth in full above, is accompanied by the Revision Comments of 1993. Comment (e) pointedly indicates that: "Under this Article, *a right of first refusal is heritable and assignable, unless the parties provide otherwise.* *See* C.C. Art. 1765 (Rev.1984).[9]" The current edition of the Louisiana Civil

---

[8] The enactment of La.Civ.Code art. 2625 did not change the law but gave "legislative formulation to a kind of agreement long recognized by Louisiana jurisprudence." La.Civ.Code art. 2625, cmt (a). *See also Gorum v. Optimist Club of Glenmora*, 99-1963 (La.App. 3 Cir. 8/30/00), 771 So.2d 690, *writ denied*, 00-2740 (La. 11/27/00), 775 So.2d 451.

[9] Louisiana Civil Code Article 1765, pointedly undermines Mr. Ebare's position that the right of first refusal cannot be assigned as it specifically provides that:

An obligation is heritable when its performance may be enforced by a successor of the obligee or against a successor of the obligor.

Law Treatise recognizes La.Civ.Code 2625's codification of the longstanding judicial recognition of the right of first refusal and explains that, although the article does so only within the context of sale, it is nonetheless permissible for other types of contracts. *See* 24 TOOLEY-KNOBLETT AND GRUNING, LOUISIANA CIVIL LAW TREATISE: SALES, § 5:24 (2021 ed.).

As pertinent to this assignment of error, Professors Tooley-Knoblett and Gruning explain that:

> Article 2625 makes clear several pertinent ideas, the first of which is that the right of first refusal is binding upon the grantor, since the grantee is given the right of specific enforcement. It is also clear from this article that a right of first refusal, like the option, is a unilateral contract, and that the grantor of the right of first refusal is the obligor and the grantee the oblige.
>
> *As a unilateral promise of sale, the right of first refusal, like the option, is heritable and assignable, unless the parties provide otherwise.*

(Emphasis added.) (Footnotes omitted.) This latter proposition is supported by reference to La.Civ.Code art. 2615, cmt (e) in ftnt 8, omitted from the above quotation for discussion purposes. The pertinent parties in this case, Isaac and Norbert, did not "provide otherwise" in this case. Isaac, instead, included the right of first refusal within the Act of Donation by which he transferred the entirety of the tract, encumbered by the right of first refusal, to Norbert.

Finding no merit in Mr. Ebare's final argument, we below affirm the trial court's judgment.

---

Every obligation is deemed heritable as to all parties, except when the contrary results from the terms or from the nature of the contract.

A heritable obligation is also transferable between living persons.

**DECREE**

For foregoing reasons, the trial court's judgment of July 14, 2021 is affirmed.

Costs of this proceeding are assessed to the appellant, Richard Ebare.

**AFFIRMED.**